UNITED STATES of America, Plaintiff-Appellee,

v.

Michael Henry BURNS, Vincent M. Andrade, Britt Lance Reynolds, Defendant-Appellants.

Nos. 78–1945 to 78–1947.

United States Court of Appeals, Tenth Circuit.

Argued Sept. 10, 1979.

Decided March 31, 1980.

Rehearing Denied July 14, 1980.

Nancy E. Rice, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Joseph Saint-Veltri, Denver, Colo. (Robert S. Berger of Davies & Saint-Veltri, Denver, Colo., on the brief), for defendant-appellant Michael Henry Burns.

Harley W. Shaver, Denver, Colo. (E. Michael Canges of Canges & Shaver, Denver, Colo., on the brief), for defendant-appellant Vincent M. Andrade.

Victor L. Abbo of Abbo & Lass, Boulder, Colo., for defendant-appellant Britt Lance Reynolds.

Before SETH, Chief Judge, HOLLOWAY, Circuit Judge, and BOHANON, District Judge *.

BOHANON, District Judge.

Michael Burns, Vincent Andrade and Britt Reynolds appeal convictions of possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Subsequent to an informer's tip by the San Diego office of the Drug Enforcement Administration to Denver agents, on July 28, 1978, Burns and Andrade were observed departing a San Diego to Denver flight, with Burns carrying a briefcase and Andrade carrying a small flight bag. Under surveillance, they proceeded to a Denver motel and checked in, changing rooms later that afternoon. Still later they began entering and leaving room 1014 of the motel and observing the parking lot through that room's curtains. About 8:00 that evening a white Ford Pinto arrived and Britt Reynolds emerged and entered room 1014.

In addition to its outside entrance, room 1014 contained a door leading into the motel's hallway. While Reynolds met with

---

* Honorable Luther Bohanon, Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

Burns and Andrade, Special Agent Ralph Lockridge was positioned outside the hallway door. Agent Lockridge heard the outside door open and someone say, "Hey, Britt, what's happening?" Subsequently, he heard "unwrapping of plastic," then "sniffing, snorting-type sounds," and references to "it" as being "really good" and "the third eye." He also heard remarks about money.

Reynolds left with a brown paper sack, drove off in the Pinto and promptly was arrested. Burns and Andrade were arrested emerging into the motel hallway. Andrade was carrying a flight bag and the same style of briefcase Burns had possessed at the airport. Burns was carrying a suitcase.

A police dog trained to detect with his sense of smell various narcotics, including cocaine, was brought to the room, where his reactions indicated the presence of narcotics in the briefcase and suitcase.

A warrant was procured authorizing searches of the Pinto and room 1014. A brown paper sack situated on the front passenger's seat of the automobile contained $13,430.00. The briefcase in the motel room contained a plastic bag filled with a white substance later determined to be 100 percent cocaine, and the suitcase's contents included a triple beam scale.

Burns, Andrade and Reynolds were indicted for possession of cocaine with intent to distribute. A superseding indictment further alleged actual distribution. At the conclusion of the trial's evidence, the court removed the distribution charge from the jury's consideration, on grounds that the government's proof failed thereon as a matter of law. All three defendants were found guilty of possession with intent to distribute.

On appeal, the legality of the warrant underlying the searches of room 1014 and Reynolds' Pinto is challenged. Other issues raised involve the admissibility of the currency found in Reynolds' car, certain jury instructions, and the sufficiency of the evidence.

To be constitutional, a search warrant must issue only upon probable cause. This requires more than mere suspicion but less evidence than is necessary to convict. *United States v. Brinklow*, 560 F.2d 1003 (10th Cir. 1977). Sufficient facts are required for a reasonably prudent person to believe that a search of the described premises would uncover evidence of a crime. *United States v. Neal*, 500 F.2d 305 (10th Cir. 1974). Probability of criminal activity is the standard of probable cause. *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969).

The facts presented to the issuing judge in this case satisfied that standard. The agent's "affidavit for search warrant" was detailed and persuasive.

It stated that "a reliable informant . . . reliable on numerous occasions in the past, dating back to 1972," whose assistance had "resulted in seizures of narcotics and arrests," alerted San Diego drug enforcement agents that Burns and Andrade would be traveling to Denver, Colorado, on July 28, 1978, with $30,000 to $50,000 for purposes of buying cocaine. It recited that this and other information provided by the informant, as to the two men's flight number and their physical appearances, were relayed to agents in Denver. The affidavit also detailed surveillance of Burns and Andrade from their arrival in Denver to their arrest, including Britt Reynolds' visit to room 1014 and Agent Lockridge's account of remarks overheard at that time. The affidavit described the arrests of all three appellants and the police dog's subsequent role, and briefly related the dog's training and qualifications. The affidavit was more than ample in providing probable cause to believe that an illicit drug transaction had occurred in room 1014 and that evidence thereof could be found both in room 1014 and Reynolds' Pinto.

Appellants assert that such information was inadequate because the informant's identity and reliability were not established and the assertion that Burns and Andrade would leave the Denver airport and drive to Colorado Springs was discredited by police surveillance.

■ We need not consider only the informant's story. A tip insufficient in itself may still be a factor in the magistrate's determination. *Spinelli v. United States*, supra, 393 U.S. at 418, 89 S.Ct. at 590. It may be buttressed by independent observations substantiating its details or by observations of activity reasonably arousing suspicion itself. *United States v. Brand*, 556 F.2d 1312 (5th Cir. 1977). The sum total of information in the affidavit provides the basis for determining probable cause.

■ Here, the informant's contribution was not inconsequential. The past reliability of the informant was presented in the affidavit, a significant fact in assessing credibility. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Also, the accuracy of much of his information was independently corroborated by Denver agents and bolstered by the general character of appellants' activities during the eight hours preceding their arrests. When all available factors are considered, including agent Lockridge's perceptions of the transaction in room 1014 and the subsequent reactions of the trained police dog to appellants' baggage, the issuing judge's determination is not subject to reasonable challenge.

■ Appellants assert that agent Lockridge's eavesdropping was unconstitutional and that the search warrant's products were illegal fruits. They rely upon *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), in which warrantless electronic eavesdropping on a telephone booth was proscribed. The court emphasized therein the Fourth Amendment's concern with people, rather than places, and condemned the invasion of the phone booth occupant's justifiable expectations of privacy. Nothing in that court's ruling would have served to suppress testimony of the phone conversation from one standing by the telephone booth. In *Katz*, the phone booth user "spoke under circumstances in which a reasonable person would assume that uninvited ears were not listening." Mr. Justice White concurring, *Katz v. United States*, supra, at 363, 88 S.Ct. at 518.

This was because the unimpaired vision that attends use of a transparent phone booth afforded him the reasonable conclusion that no listener was in the vicinity. Legitimate privacy expectations cannot be separated from a conversation's context. Bedroom whispers in the middle of a large house on a large, private tract of land carry quite different expectations of privacy, reasonably speaking, than does a boisterous conversation occurring in a crowded supermarket or subway. Expectations attaching to a motel conversation must fall somewhere in between. Motel occupants possess the justifiable expectation that if their conversation is conducted in a manner undetectable outside their room by the electronically unaided ear, that it will go unintercepted. Contrarily, to the extent they converse in a fashion insensitive to the public, or semipublic, nature of walkways adjoining such rooms, reasonable expectations of privacy are correspondingly lessened. *United States v. Fisch*, 474 F.2d 1071 (9th Cir. 1973).

■ What a person knowingly exposes is not constitutionally protected from observation. *Katz v. United States*, supra. Neither are activities or objects which are exposed, regardless of subjective intent, in a manner inconsistent with reasonable expectations of privacy. *United States v. Bruneau*, 594 F.2d 1190 (8th Cir. 1979). Thus, it is not a "search" to observe that which occurs openly in public. *Trujillo v. United States*, 294 F.2d 583 (10th Cir. 1961). Nor is it a search when a law enforcement officer makes visual observations from a vantage point he rightfully occupies. *United States v. Orozco*, 590 F.2d 789 (9th Cir. 1979). This applies also to perceptions derived from hearing or smelling. See *Cuevas-Ortega v. Immigration and Naturalization Service*, 588 F.2d 1274 (9th Cir. 1979).

■ Agent Lockridge's eavesdropping was not illegal, and the results thereof were proper and competent evidence. *United States v. Fisch*, supra.

■ Appellants also challenge the arresting officer's use of Smokey, the drug-

detecting police dog, prior to procurement of a search warrant. Generally, a limited, warrantless search of a motel room incident to the lawful arrest of its occupants is permissible. See *United States v. Pollard*, 466 F.2d 1, 4 (10th Cir. 1972). This principle applies where, as here, the arrest occurs at an entrance way. Additionally, the officers reasonably used the room to secure their prisoners and to maintain temporary custody. Thus, their presence was justifiable. It is well settled that the olfactory activities of a trained police dog legitimately on the premises do not constitute a search. *United States v. Venema*, 563 F.2d 1003 (10th Cir. 1977).

As stated in a similar case:

"If the police officers here had detected the aroma of the drug through their olfactory senses, there could be no serious contention that their sniffing in the area of the bags would be tantamount to an unlawful search. [citations omitted] We fail to understand how the detection of the odoriferous drug by the use of the sensitive and schooled canine senses here employed alters the situation and renders the police procedure constitutionally suspect." *United States v. Bronstein*, 521 F.2d 459 (2nd Cir. 1975).

■■■ As of the time of their arrest, appellants' legitimate expectations with regard to the locked briefcase were that it would remain unopened absent warrant authorization. The dog's mere sniffing of such did not offend constitutional guarantees. *United States v. Venema*, supra.

■■■ As applied to Reynolds' automobile, the warrant is attacked for its failure to list currency as the item sought. Appellant Reynolds argues that this failure created a "general search" in violation of Fourth Amendment requirements enunciated in *Marron v. United States*, 275 U.S. 192, 195, 48 S.Ct. 74, 75, 72 L.Ed. 1016 (1927). The fundamental "veracity" or "truthfulness" of the warrant's underlying affidavit is also challenged based on this same omission.

A single search warrant was issued as to room 1014 and the Pinto. The objects of the searches, as detailed in the warrant, were "narcotic drugs," (defined in the warrant so as to include cocaine), "implements . . . used in connection with the manufacture, production, storage, or dispensing of such drugs," "personal property tending to establish the identity of persons in control of contraband," and "related paraphernalia consisting in part and including, but not limited to utility company receipts, rent receipts, cancelled mail envelopes, photographs and keys." We discern, and the record reveals, no lack of good faith or other infirmity as to the warrant's particularity. When the warrant was issued, probable cause existed to believe that an illicit drug transaction had recently transpired in room 1014 and that evidence thereof could be found both in the room and in the car of the participant who had departed. Items integral to that transaction were being sought. Their exact nature and their location either as to the room or the car were not clear. This rendered neither the warrant nor the search defective. Probable cause for the search existed and was presented to the issuing judge, and the warrant's language was sufficiently specific to avoid the evils of a "general search," yet sufficiently flexible to allow seizure of all evidence integral to the crime. Constitutional requirements were met. *See Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627, (1976). Ideally, the warrant's list should have included "currency." However, the seizure of the unlisted money represented no undue exercise of police discretion and no abuse of Fourth Amendment safeguards.

■■■ Next, Burns and Andrade assert that the evidence was legally insufficient to sustain their convictions as to the essential element of "intent to distribute." They argue that the only evidence as to intent was a chemist's testimony that the seized cocaine was 100 percent pure, and that due to a complete absence of expert testimony as to that fact's relevance, no sufficient basis was presented for finding intent to distribute. This represents an overly restrictive view both of the evidence and the jury's function. In reviewing the evi-

dence's sufficiency, an appellate court must view the evidence, and all reasonable inferences that may be drawn therefrom, in the light most favorable to the prosecution, in determining whether the record discloses substantial evidence supportive of the jury's conclusion that appellants' guilt was established beyond a reasonable doubt. *United States v. Brinklow*, 560 F.2d 1008 (10th Cir. 1977). From this perspective, the following scenario emerges.

Burns and Andrade flew from San Diego to Denver, rented a car, and drove to a Denver motel where a room had been reserved for the express purpose of conducting a drug purchase. Reynolds arrived at the room later that evening with the cocaine, a sale was completed using weighing scales carried from California for that purpose, and Reynolds departed after being paid more than $13,000 in cash.

Frequently, juries are instructed, and correctly so, that they are permitted to draw from facts which they find have been proved such reasonable inferences as are justified in the light of experience. See, for example, Devitt and Blackmar, Federal Jury Practice and Instructions, § 11.11 (3rd ed. 1977). Even absent explicit instruction, this function is integral to their deliberations. It was by no means unreasonable to infer, as the jury did, that Burns and Andrade intended to distribute the cocaine, rather than personally consume it. The jurors had an opportunity to view and examine the quantity involved and to infer that it had been sold for over $13,000. The drug's purity and the general circumstances surrounding the sale, including the trip from San Diego to Denver, the rented motel room, and the weighing equipment employed, all tended to demonstrate a sophisticated and expensive operation with larger designs than provision for Burns and Andrade's personal use.[1] Doubtless the government's proof could have been more expansive on this issue. Nonetheless, to challenge the reasonableness of the jury's verdict on this point is to impute to them an unwarranted naiveté.

This discussion of the evidentiary significance of the cash recovered from Reynolds' car disposes, ipso facto, of the contention that the money's irrelevance rendered it inadmissible.

Appellants contend that they were entitled to have the jury consider the "lesser included offense" of mere possession (21 U.S.C. § 844), which carried a less severe penalty than did possession "with intent to distribute." Rule 31 of the Federal Rules of Criminal Procedure provides that the defendant may be found guilty of "an offense necessarily included in the offense charged."

"Although the lesser included offense doctrine developed at common law to assist the prosecution in cases where the evidence failed to establish some element of the offense originally charged, it is now beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973).

In *Larson v. United States*, 296 F.2d 80, 81 (10th Cir. 1961), the defendant was convicted of stealing property with a value in excess of $100 (18 U.S.C. § 661) and he appealed the trial court's refusal to instruct on the lesser offense of theft of government property without regard to value, which was a misdemeanor. The court noted:

"An essential element and, indeed, the gravamen of the offense charged under § 661, is the theft of property. Proof of this element, regardless of the value of the thing stolen, establishes no less than

---

1. Evidence of price or quantity of a narcotic possessed is generally relevant to intent to distribute. *United States v. Palmere*, 578 F.2d 105, 108 (5th Cir. 1978). Also, it is a reasonable inference that the purer the drug the more likely it is that it will be "cut" or diluted and resold before being consumed. This is often a matter of common knowledge to television viewers of police dramatizations.

the misdemeanor set forth in the statute. Subsequent proof that the thing stolen had a value in excess of $100.00 bears only upon the penalty which may be imposed. Stated differently, the crime of stealing property valued in excess of $100.00 necessarily includes, as an integral step in its commission, a theft of property. This theft, standing alone, is a lesser offense, necessarily included in the offense charged."

In reversing the conviction, the court held that the failure to accede to a timely and appropriate request for submission to the jury of a lesser offense, "withdraws from the jury a measure of defense to which the defendant is entitled." *Larson v. United States*, supra, at 81.

In *Larson*, the court relied upon the Supreme Court's decision in *Berra v. United States*, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956), which reviewed a conviction for willfully attempting to evade federal income taxes by filing "false and fraudulent" tax returns in violation of 26 U.S.C. (1952 ed.) § 145(b). The defendant appealed the trial judge's refusal to submit for jury consideration the "lesser crime" under 26 U.S.C. (1952 ed.) § 3616(a), of delivering to the Internal Revenue Service "any false or fraudulent list, return, account, or statement with intent to defeat or evade the valuation, enumeration, or assessment intended to be made . . . ." The charged offense was a felony, whereas the latter crime was a misdemeanor. The court upheld the trial court's refusal because the facts necessary to prove each crime were identical, and thus, submitting the defendant's proposed instruction to the jury "would not have added any other . . . issue [of fact] for the jury's determination." *Berra v. United States*, supra, at 135, 76 S.Ct. at 688. Application of the misdemeanor statute did not invoke a "lesser crime" because its elements were coextensive with those of the charged offense. Significantly, however, the court observed: "In a case *where some of the elements* of the crime charged themselves *constitute a lesser crime*, the defendant, if the evidence justified it, would no doubt be entitled to an instruction which would permit a finding of guilt of the lesser offense." (emphasis supplied) *Berra v. United States*, supra at 134, 76 S.Ct. at 688.

Certain commonly recognized prerequisites attend a defendant's right to a "lesser offense" instruction:

1. The defendant must properly and timely request such an instruction. *Larson v. United States*, supra; *United States v. Coppola*, 526 F.2d 764 (10th Cir. 1975).

2. A "lesser offense" must apply, comprised of some, but not all, of the essential elements of the offense charged. Rule 31, Federal Rules of Criminal Procedure; *Berra v. United States*, supra; *United States v. Coppola*, supra.

3. The evidence must permit a jury rationally to convict of the lesser offense, but acquit of the offense charged. *Keeble v. United States*, supra; *United States v. Coppola*, supra.

In *United States v. Coppola*, supra, an inmate at Leavenworth penitentiary charged with first degree murder requested that the jury be allowed to consider lesser degrees of homicide. The government's evidence tended to show that Coppola contracted with certain other inmates to have another inmate killed. Coppola argued that he did not participate in the killing in any fashion. At issue was Coppola's involvement, not whether such involvement constituted some lesser degree of homicide than first degree murder. The jury could not rationally have acquitted on the charged offense, but convicted on a lesser offense. Thus, the trial court's refusal to instruct as requested was upheld on appeal. If no evidentiary controversy focuses on elements of the offense charged which are not part of the "lesser offense," then no "lesser offense" instruction is appropriate. *United States v. Coppola*, supra; *Sansone v. United States*, 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965).

In *United States v. Brischetto*, 538 F.2d 208 (8th Cir. 1976), a conviction for possession of marijuana "with intent to distrib-

ute" was reversed because of the trial court's refusal to give a requested instruction on mere possession. The court noted:

"An essential element of the offense covered by the indictment is proof of intent to distribute. Such proof is not required for a conviction under 21 U.S.C. § 844 covered by the requested instruction.

A careful review of the entire record satisfies us that there is substantial evidence to support a conviction on either charge. The evidence in support of the simple possession charge is stronger than that on the intent to distribute charge.

\*    \*    \*    \*    \*    \*

The Government also relied upon the permissible inference of intent to distribute that can arise from the possession of a large quantity of a controlled substance. Such an inference may be made by the jury, but the jury is not compelled to make the inference. [citations omitted] The possession of the quantity of marijuana here involved is sufficient to permit an inference by the jury of an intent to distribute. However, the jury, on the basis of the evidence before us, was free to determine whether or not to draw the inference. We hold that a dispute in the evidence exists with respect to the issue of defendant's intent to distribute. Such dispute requires resolution by the jury. A rational basis exists for the jury to convict the defendant on the possession charge and acquit him on the intent to distribute charge. The court erred in denying defendant's requested instruction." *United States v. Brischetto,* supra, at 209–210.

■ Possession of a controlled substance, relative to the crime of possession of such with intent to distribute, is a prototyp-

al "lesser included offense." *United States v. Brischetto,* supra; see also *United States v. Trujillo,* 497 F.2d 408 (10th Cir. 1974). Burns and Andrade were arrested while in possession of cocaine, but previous to any distribution. We have herein held that the evidence was sufficient to support the jury's inference that these appellants possessed cocaine with an intent to distribute, but the jury was free also not to draw such inference.[2] Burns and Andrade were entitled to jury consideration of the offense of simple possession (21 U.S.C. § 844). Reynolds' conviction, on the other hand, necessarily was predicated on the determination that Burns and Andrade came into possession through distribution from Reynolds. Thus, no rational basis existed for concluding that Reynolds was guilty of possession, but without any intent to distribute.[3]

The indictment under which appellants were tried charged distribution as well as possession with intent to distribute, but only the "possession with intent" charge was tendered for the jury's consideration. Appellants challenge this occurrence, emphasizing that the jury was presented with the entire indictment, but was never explicitly directed to disregard the distribution charge.

■ It is clear that a court may withdraw from jury consideration indictment counts unsupported by evidence. *United States v. Hall,* 536 F.2d 313 (10th Cir. 1976). The fact that here the court withdrew one of two charges contained in a single count is inconsequential. The controlling principle is that " '. . . a portion of an indictment that the evidence does not support may be withdrawn from the jury, and this is not an impermissible amendment, provided nothing is thereby added to the indictment, and that the remaining allega-

---

**2.** In its brief the government remarks: "While obviously the jury was not compelled to draw the inference from [the] evidence that Burns and Andrade had a specific intent to distribute cocaine, sufficient evidence was before them that would allow them to do so."

**3.** Appellants stress the trial court's decision that insufficient evidence was presented to al-

low the jury to consider the charge of actual distribution. This was certainly true as to Burns and Andrade. However, as to Reynolds the jury obviously concluded that he had distributed the drug because the evidence showed no possession at all by him at the time of his arrest. This conclusion was within the jury's prerogative.

tions charge an offense.' (C. Wright, 1 Federal Practice and Procedure 274–75 (1969).)" *United States v. Dawson*, 516 F.2d 796 (9th Cir. 1975).

 A specific caveat to disregard the distribution charge would have been preferable. Nonetheless, the sufficiency of the instructions is not determined by giving or not giving particular instructions, but rather by viewing the instructions as a whole. *United States v. Beitscher*, 467 F.2d 269 (10th Cir. 1972). Generally, the court satisfies its duty by giving instructions which sufficiently cover the case and which are correct. *United States v. Gurule*, 437 F.2d 239 (10th Cir. 1970). The court instructed the jury on the essential elements of the offense submitted to them in a clear and correct fashion. No reversible error occurred.

 Additionally, "possession" is a "lesser offense" of "distribution." See *United States v. Klugman*, 506 F.2d 1378 (8th Cir. 1974). Because the offense of "distribution" must occur "knowingly or intentionally" [21 U.S.C. § 841(a)], "possession with intent to distribute" is also a lesser included offense of distribution. Thus, in accordance with our earlier analysis, a finding of guilt as to distribution necessarily establishes the jury's belief that appellants possessed the cocaine with an intent to distribute. "To be 'necessarily included' within the meaning of the Rule, the lesser offense must be such that it is impossible to commit the greater without having first committed the lesser." *Larson v. United States*, supra, at 81.

The judgment of conviction of Britt Reynolds is affirmed. Those of Michael Burns and Vincent Andrade are reversed and remanded. Based on the analysis contained in *United States v. Whitaker*, 447 F.2d 314, 322 (D.C. Cir. 1971), we hold that the District court may, after hearing all parties and obtaining the government's consent, set aside the convictions of Burns and Andrade and enter a judgment of conviction for the included offense of mere possession (21 U.S.C. § 844). Alternatively, it is within the district court's discretion to order a new trial.

IT IS SO ORDERED.