**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jack I. TWIFORD, Defendant-Appellant.**

**No. 78–1102.**

United States Court of Appeals, Tenth Circuit.

Submitted Oct. 6, 1978.

Decided June 29, 1979.

Rehearing Denied Aug. 3, 1979.

Robert Dunlap and William H. Kirkman, Jr., Colorado Springs, Colo., for defendant-appellant.

Joseph F. Dolan, U. S. Atty., and Edward W. Nottingham, Asst. U. S. Atty., Denver, Colo., for plaintiff-appellee.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Defendant, an officer and director of the Bank of Colorado (the Bank), was convicted of four counts of misapplying various sums of money, funds and credits of the Bank in violation of 18 U.S.C. § 656.[1] He was sentenced to an identical concurrent custody period and received a separate fine for each of the four counts.

The evidence introduced in support of Count I demonstrated that Thomas Murdock contacted defendant seeking to borrow $35,000 from the Bank. On April 23, 1973, the Bank loaned him $45,000. The proceeds of the loan were deposited in Murdock's checking account and a check for $5,000 was made out to defendant and deposited in defendant's checking account the next day. Sometime in the spring of 1977 a note purporting to have been signed on April 23, 1973, and characterizing the $5,000 as a loan was executed by defendant. Murdock's loan was unsecured until after June 30, 1974, the date defendant left the Bank's employ.

Count II related to a series of loans made on August 9, 1973. On that day the Bank made the following loans: $11,000 to John Finn, a business associate of Thomas Murdock's; $10,000 to Finn Enterprises, a corporation owned solely by Finn; $25,000 to Fish Creek Falls Development Co., a joint venture between Finn Enterprises and Murdock; and $5,000 to Murdock personally. About this time, Finn and Murdock each drafted a $5,000 check made payable to "Cash." Defendant deposited both checks in his checking account, using a deposit slip bearing his account number but not his name.

The evidence in support of Count III shows that Pat Grigsby, president of Midwest Associated Construction, Inc., approached defendant in March 1974. Grigsby was negotiating a construction contract

1. 18 U.S.C. § 656 (1976) reads in pertinent part:
   Whoever, being an officer [or] director . . . of . . . any . . . national bank or [federally] insured bank . . . willfully misapplies any of the moneys, funds or credits of such bank . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both . . . .

and needed to borrow $20,000 to cover anticipated periodic expenses. He also needed to find someone to cosign the necessary construction bond. Several days later, defendant told Grigsby he knew someone who would cosign the bond for a $6,500 fee. Grigsby borrowed $26,500 from the Bank on March 22, 1974. A check for $6,500, representing the cosigning fee, was made payable to a fictitious party, but the jury concluded that through a series of transactions the sum had been channeled to defendant. The person who defendant later claimed was the anonymous cosigner testified at trial that he knew nothing of the transaction.

The evidence relating to Count IV indicated that defendant had advised a depositor to engage in check kiting to "correct" an overdraft in his checking account with the Bank. In addition, evidence was presented that defendant had engaged in various accounting machinations to conceal illegal overdrafts in the same account.

On appeal, defendant makes several arguments to demonstrate his entitlement to reversal respecting Counts I through III.[2] Initially, he contends that 18 U.S.C. § 656 is not violated if the borrower is capable of repaying the loan at the time it is made and if he understands that he is solely liable for repayment. Defendant suggests that this was the case regarding the transactions in Counts I, II and III.

"[I]t has been left to the courts to define the acts which constitute willful misapplication of bank funds within the meaning of" section 656. *United States v. Gens,* 493 F.2d 216, 221 (1st Cir. 1974). We have held that "misapplication occurs when an officer of a bank knowingly lends money to a fictitious borrower or causes the loan to be made to his own benefit, concealing his

interest from the bank." *United States v. Cooper,* 464 F.2d 648, 651 (10th Cir. 1972) [quoting *United States v. Fortunato,* 402 F.2d 79, 81 (2d Cir. 1968)], *cert. denied,* 409 U.S. 1107, 93 S.Ct. 901, 34 L.Ed.2d 688 (1973). The Ninth Circuit view is that "the misapplication of funds proscribed by 18 U.S.C. § 656 occurs when funds are distributed under a record which misrepresents the true state of the record with the intent that bank officials, bank examiners, or the Federal Deposit Insurance Corporation will be deceived." *United States v. Kennedy,* 564 F.2d 1329, 1339 (9th Cir. 1977) (footnote omitted). Defendant's deceptive self-dealing as proven under Counts I, II and III readily fits within these definitions of willful misapplication prohibited by section 656.

Defendant relies on *Gens v. United States,* 493 F.2d 216 (1st Cir. 1974), to support his position. He points to language in that case suggesting that section 656 is not violated when a loan is made to "a financially capable party." *Id.* at 222. Although the government urges that *Gens* is distinguishable from the instant case, for the present purpose it is sufficient to note that insofar as the standards employed in *Gens* vary from our own standards as announced in *Cooper,* we are unable to utilize them. Further, defendant's contention that the instant case is itself distinguishable from our *Cooper* decision is not persuasive. The claim is that in *Cooper* the formal borrowers were not held responsible for repayment; rather, the bank officers who truly benefited from the loans made the payments. While this statement appears to be supported by the facts as set forth in *Cooper,* it was not the basis for the decision. There, as here, the factor of controlling significance was that defendants "were receiving the benefits of loans without disclosing this fact." *United States v. Cooper,* 464 F.2d at 652.

---

2. With respect to Count IV, defendant suggests only that his conviction should be reversed because he was not shown to have received any personal benefit from the check kiting and overdraft concealment efforts. There is no merit to this contention. The scheme clearly resulted in a misapplication of the Bank's funds and fully sustains a guilty verdict. *See, e.g., Swingle v. United States,* 389 F.2d 220, 222 (10th Cir.), *cert. denied,* 392 U.S. 928, 88 S.Ct. 2285, 20 L.Ed.2d 1386 (1968).

**1342**

Defendant also contends that the court below erred in not including a definition of the term "misapply" in its instructions to the jury. Although a comprehensive definition of the term was not given, one was not necessary. The court's instruction utilized the very standard we announced in *Cooper*:

> Misapplication also occurs when an officer or director of a bank knowingly lends money to a fictitious borrower or causes a loan to be made to his own benefit, concealing his interest from the bank.

Record, vol. 4, at 28. *See United States v. Cooper*, 464 F.2d at 651. Under the proof adduced by the government, it was only in this way, if at all, that defendant was guilty of section 656 violations on the first three counts. It was not necessary that the jury be made aware of what other types of conduct might also constitute misapplication in violation of section 656.

Defendant's final argument is that the government's proof at trial under Counts I, II and III established violations of 18 U.S.C. § 215,[3] a misdemeanor, and that the jury should have been instructed on

section 215 as a lesser included offense. It may be that defendant's acts violated section 215.[4] It does not follow, however, that a section 215 violation is a lesser offense included in a breach of section 656.

Defendant acknowledges that to be a lesser included offense, "the elements of the lesser offense must," among other things, "be identical to part of the elements of the greater offense." *United States v. Whitaker*, 144 U.S.App.D.C. 344, 347, 447 F.2d 314, 317 (1971). As an example, larceny is a lesser included offense of robbery, since "[r]obbery consists of all six elements of larceny" *plus* "that the property be taken from the person or presence of [the victim] and . . . that the taking be accomplished by means of force or putting in fear." W. LaFave & A. Scott, *Handbook on Criminal Law* 692 (1972). Robbery is in turn a lesser included offense of armed robbery, since the latter includes all the elements of robbery *plus* use of a dangerous weapon. *See id.* at 702–03.

The requisite identity does not obtain in the instant situation. A misapplication in violation of section 656 is not simply a sec-

---

**3.** 18 U.S.C. § 215 (1976) reads in pertinent part:

> Whoever, being an officer . . . of any bank, the deposits of which are insured by the Federal Deposit Insurance Corporation . . . except as provided by law, stipulates for or receives or consents or agrees to receive any fee, commission, gift, or thing of value, from any person, firm or corporation, for procuring or endeavoring to procure . . . any loan . . . shall be fined not more than $5,000 or imprisoned not more than one year or both.

**4.** The government disputes that section 215 would apply to the transactions in this case, or at least to all of them. See Appellee's Brief at 23. Even assuming that section 215 would have applied to defendant's acts, it was not error to proceed under section 656 since defendant's acts violated that section as well. *See, e. g., United States v. Larsen*, 596 F.2d 410 (10th Cir. 1979). There could be a Double Jeopardy problem if a defendant were charged and convicted for violation of both sections on exactly the same transactional facts. *See Simpson v. United States*, 435 U.S. 6, 11, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978); *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Blockburger v. United States*, 284 U.S.

299, 304, 52 S.Ct. 180, 76 L.Ed. 303 (1932). We need not address this issue here since defendant was not convicted under both sections.

We note also that if, in enacting section 215, Congress intended that acts such as defendant perpetrated were to be prosecuted only under section 215, then prosecution under the more general section 656 would be impermissible. Defendant has not suggested, nor has our independent research revealed, that in enacting the forerunner of section 215, Federal Reserve Act, Pub.L.No.63–43, § 22, 38 Stat. 272 (1913), Congress meant to limit the scope of section 656's predecessors, which date from the Act of June 3, 1864, ch. 106, § 55, 13 Stat. 116. Indeed, in 1948 Congress revised the body of federal criminal law. Act of June 25, 1948, Pub.L.No.80–772, 62 Stat. 683. Congressional review was exhaustive and although "[r]evision, as distinguished from codification, meant . . . reconciliation of conflicting laws, omission of superseded sections, and consolidation of similar provisions," H.R.Rep.No.304, 80th Cong., 1st Sess. 2 (1947), section 215 (then section 220) and section 656 were preserved as separate sections without any express limitation on each other.

tion 215 violation *plus* some additional element. The statutory elements of a section 656 misapplication violation are: (1) the willful (2) misapplication (3) of money, funds, or credits (4) of a federally protected bank. By contrast, the elements of a section 215 offense are: (1) the receiving or consenting to receive (2) a fee, commission, gift, or thing of value (3) for procuring or attempting to procure (4) a loan (or certain other benefits) from a federally protected bank. The lack of identity between the two crimes is not merely a formalistic or semantic one. The evidence introduced under Count III in this case is illustrative. Defendant did not receive a fee from Grigsby *for procuring* that loan. Rather, he took for himself that portion of the loan proceeds which he led Grigsby to believe was necessary for obtaining a construction bond cosigner. Thus, defendant did not accept an inducement for the loan in question; he simply took part of it without disclosing to the bank or the borrower that he was doing so.

The judgment below is affirmed.