UNITED STATES of America,
Plaintiff-Appellant,

v.

Warren Dean DRAKE,
Defendant-Appellee.

No. 80–2327.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted July 15, 1981.

Decided July 31, 1981.

Marianne Wesson, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., with her on the brief), for plaintiff-appellant.

Stephen M. Munsinger, Denver, Colo. (Barbara L. Bader, Denver, Colo., with him on the brief) of Keene, Munsinger & Stuckey, Denver, Colo., for defendant-appellee.

Before McKAY and LOGAN, Circuit Judges, and BROWN, District Judge.*

LOGAN, Circuit Judge.

The United States appeals from a district court order dismissing an indictment against Warren Dean Drake, suppressing evidence, and ordering its return to defendant. Drake was charged with offering for sale and selling two American flamingos (*phoenicopterus ruber*) in violation of the Migratory Bird Treaty Act, specifically 16 U.S.C. §§ 703 and 707(b).

The issues on appeal are whether the trial judge erred in (1) dismissing the indictment as a sanction for violation of pretrial publicity guidelines, (2) suppressing use of the flamingos as evidence on the ground that wildlife officers did not serve an arrest warrant they held until after completing their purchase and taking possession of the birds, and (3) ordering the return of the flamingos, asserted to be contraband, to the defendant.

It appears undercover agents of the Fish and Wildlife Service contacted Drake in response to a magazine advertisement he had placed offering various birds for sale. The agents later visited Drake at his home and place of business near Royal Gorge in Colorado. At that time, the agents ob-

served two flamingos on the premises and inquired as to their availability. After negotiations, Drake agreed to sell the flamingos for $2500. The agents gave Drake a $200 deposit and arranged to return October 2, 1980, to pay the balance and pick up the birds.

Upon their return to Denver, the agents contacted the United States Attorney's office and were advised to obtain an arrest warrant. A complaint was sworn before a magistrate and a warrant issued October 1, 1980. The following day, the agents returned to Drake's residence, taking with them the warrant and a cage for the birds. Instead of serving the warrant immediately, they helped Drake catch the flamingos and place them in the agents' van. After paying the remaining $2300 to Drake, the agents identified themselves and made the arrest. Drake was escorted to Denver, where he was arraigned and released on his own recognizance.

That afternoon a public relations officer of the wildlife service spoke with the agents concerning the arrest, then issued a press release by telephone to the local offices of the wire services. Stories on Drake's arrest appeared in newspapers in Drake's hometown, in the city where his parents reside, and at the college where Mrs. Drake's daughter attends school. A somewhat altered version of the first press release was distributed to the local media the following day.

Drake filed motions to suppress the flamingos as evidence on the ground that their seizure was improper without a search warrant. He also moved that the indictment be dismissed on grounds that the press release violated the guidelines of the Department of Justice, the local rules of court, and the Canons of Professional Responsibility and the attendant publicity had prejudiced his right to a fair trial. Following a hearing, the district court granted both motions and ordered the flamingos to be returned to Drake. The order for return was stayed to

---

* Honorable Wesley E. Brown, of the United States District Court for the District of Kansas, sitting by designation.

permit the government to bring a forfeiture action. The government then appealed pursuant to 18 U.S.C. § 3731.

## I

■ Although Drake relied upon the due process clause of the Fifth Amendment and other grounds in support of his motion to dismiss, the trial court, relying on its supervisory powers to correct prosecutorial misconduct, dismissed the action "for failure to follow the rules of this Court for failure to follow the policies of the Justice Department with regard to the issuing of the press releases and pretrial publicity." R. Vol. IV, 3–4. By local rule the wrongdoing of the wildlife public relations official is attributed to the U.S. Attorney. District of Colo. Rules of Pract. 1(f).

No actual prejudice to a fair trial for Drake is shown by the misconduct. We believe this case is controlled by *United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981), in which the Supreme Court held that dismissal based on a prosecutor's violation of a defendant's Sixth Amendment rights was improper.

> "[A]bsent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate. This has been the result reached where a Fifth Amendment violation has occurred, and we have not suggested that searches and seizures contrary to the Fourth Amendment warrant dismissal of the indictment. The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression."

449 U.S. 365–66, 101 S.Ct. 668–69. Furthermore, the Court indicated in *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), that a district court may not use its supervisory powers to achieve the same result.

## II

The district court determined that the flamingos should be suppressed as evidence because the agents delayed the execution of the arrest warrant in order to complete the purchase and strengthen their case against Drake.

■ There is no requirement that an arrest warrant be executed immediately after its issuance; rather, the general rule is that, while execution should not be unreasonably delayed, law enforcement officers have a reasonable time in which to execute a warrant and need not arrest at the first opportunity. *United States v. Joines*, 258 F.2d 471, 472 (3d Cir.), *cert. denied*, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). *See also United States v. Kelley*, 395 F.2d 727 (2d Cir.), *cert. denied*, 393 U.S. 963, 89 S.Ct. 391, 21 L.Ed.2d 376 (1968); *United States v. Wilson*, 342 F.2d 782 (2d Cir. 1965). Delay has been held fatal, however, when government agents have purposely delayed execution to gain a tactical advantage not otherwise attainable—for example, to search "incident to arrest" premises for which a warrant was unobtainable. *McKnight v. United States*, 183 F.2d 977 (D.C. Cir. 1950). This is not such a case. The flamingos apparently were in a pen at Drake's place of business in full, public view. There is no reason to believe the agents were using the arrest warrant as a pretext for an exploratory search or other improper purpose.

■ The arrest was made on the day following issuance of the warrant; the agents served the warrant perhaps less than an hour after they arrived on the premises of the accused. The agents apparently delayed service in order to strengthen their case and to obtain peaceful possession of the birds. The legal question is whether such a delay is, in and of itself, impermissible. We hold it is not when the evidence thus obtained could have been lawfully secured without the arrest warrant. *Accord, United States v. Joines*, 258 F.2d at 472–73 ("While its execution should not be unreasonably delayed there may be perfectly valid reasons why further investigation should be made before the drastic step is taken of arresting a citizen on a criminal charge."); *Giordenello v. United States*, 241 F.2d 575, 579 (5th Cir. 1957), *revd. on other grounds*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503

(1958) ("[N]othing has been cited to cause us to hold that, once armed with a warrant valid on its face, an officer is denied the right to execute it at a time when he can catch the accused 'with the goods.' ")

The agents, of course, need not have obtained an arrest warrant to make a lawful arrest when the $2300 was turned over to Drake in exchange for the flamingos. *See United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Holding a seizure defective because agents who obtained a warrant delayed a few minutes in its execution to complete the sale would discourage law enforcement officers from obtaining such warrants in the future when strong public policy encourages their use whenever practicable.

█ If it was proper to delay the arrest until completion of the sale and transfer of possession of the flamingos, as we hold, there was no need for the officers to obtain a search warrant. This situation is no different in essence from an undercover agent's purchase of heroin; surely no court would require a search warrant to justify evidentiary use of heroin acquired in such a transaction.

### III

█ As we have held the arrest and the taking of the birds were proper, the order for the flamingos' return may not stand. 16 U.S.C. § 706 requires that protected birds "when found, be seized and, upon conviction of the offender . . . be forfeited to the United States." Even if Drake is not convicted under the indictment, if the birds are found to be "possessed contrary to the provisions of sections 703 to 711" they are to be forfeited to the United States. *Id.*

In the proceedings before the district court it was assumed, without express testimony, that the birds are in fact of the species protected by the Act. This matter will be resolved at the trial as one of the key elements to be proved. Since they were lawfully taken into custody, return of the flamingos to defendant at this time, before their status is established at trial, would clearly violate the provisions of the

statute and the public policy expressed therein.

The decision of the district court is reversed; the case is remanded for further proceedings consistent herewith.

IT IS SO ORDERED.