UNITED STATES of America,
Plaintiff-Appellee,

v.

Nick KAPNISON, Defendant-Appellant.

No. 82–1850.

United States Court of Appeals,
Tenth Circuit.

Sept. 4, 1984.

Logan, Circuit Judge, filed opinion concurring in part.

Jenkins, District Judge, filed concurring opinion.

Richard J. Smith, Asst. U.S. Atty., Albuquerque, N.M. (William L. Lutz, U.S. Atty., Albuquerque, N.M., with him on brief), for plaintiff-appellee.

Michael E. Vigil of Marchiondo & Berry, P.A., Albuquerque, N.M., for defendant-appellant.

Before BARRETT and LOGAN, Circuit Judges, and JENKINS, District Judge.[*]

BARRETT, Circuit Judge.

Nick Kapnison (Kapnison) appeals from an adverse jury verdict in which he was found guilty of conspiring to impede the United States in its collection of income taxes in violation of 18 U.S.C.A. § 371, making a false tax return in violation of 26 U.S.C.A. § 7206(1), participating in the misapplication of funds of an F.D.I.C.-insured bank in violation of 18 U.S.C.A. § 656, and participating in a loan kickback scheme in violation of 18 U.S.C.A. § 215.

Kapnison, Ben Bronstein, and Henry Harenberg were jointly indicted in an eighteen-count superseding indictment filed in Albuquerque, New Mexico, on September 1, 1981. The indictment charged that Kapnison, an Albuquerque businessman, Bronstein, the owner of the First National Bank

of Clovis (Bank) and Harenberg, president of Bank, conspired to obtain loans from Bank for various borrowers, and thereafter received kickbacks from the proceeds of the loans and agreed to divide the kickbacks among themselves without correctly reporting their respective incomes. Upon motion, each defendant received a separate trial.

Prior to trial, Kapnison filed various motions: to dismiss the indictments on the grounds of prosecutorial misconduct in obtaining the testimony of attorneys before the Grand Jury; to suppress all tapes, recordings, and statements in the possession of the government obtained via conversations between Kapnison and his ex-wife Natalyn; to sever the counts of the indictment because of prejudice; to move the trial to a different division because of massive pretrial publicity; and to dismiss the indictment on the ground that the government had engaged in gross prosecutorial misconduct in eliciting testimony from Natalyn. All of Kapnison's motions were denied.

Harenberg was tried at Roswell, New Mexico, and convicted of all the charges against him. Thereafter, and prior to Kapnison's scheduled trial in Roswell, Kapnison moved to avoid trial in Roswell, citing the publicity surrounding Harenberg's trial and conviction. Kapnison also moved for individual voir dire of the jury pool, citing the publicity attendant to Harenberg's trial. These motions were denied by the court. Kapnison was tried in Roswell some three weeks after Harenberg was tried and convicted.

The government developed its case against Kapnison through the testimony of numerous witnesses, including his wife, Natalyn, the seven borrowers who received loans from Bank, the investigating officers, and IRS Agent B.W. Wilson who testified as a summary witness.

[*] Honorable Bruce S. Jenkins of the United States District Court for the District of Utah, sitting by designation.

On appeal, Kapnison raises ten allegations of error which we shall consider in the order presented.

## I.

Kapnison contends the district court erred in denying his motion to dismiss the indictment. Kapnison moved to dismiss alleging that "the government may have presented evidence which is violative of various privileges guaranteed to [him]." [R., Vol. I at 22]. In denying this motion, the district court found:

> Kapnison has moved to dismiss the Grand Jury Indictment for prosecutorial misconduct. Kapnison maintains that the United States acted improperly in eliciting testimony before the Grand Jury in violation of the attorney-client privilege. I will again consider defendant's motion if it is established that there was any attorney-client relationship between Kapnison and any of the witnesses before the Grand Jury. [R., Vol. I at 52].

On appeal, Kapnison contends that government agents contacted his wife, Natalyn, while he was a "target" of the grand jury and in the midst of a divorce action, and coerced her to become an agent for the government in connection with the pending matters before the grand jury. Kapnison argues that the conduct of the government's agents was particularly egregious when, as here, the agents took advantage of the fact that he was involved in divorce proceedings and attempting to reconcile with his wife. Kapnison argues that the government's conduct, coupled with Natalyn's subsequent testimony before the grand jury, was in violation of his fifth and sixth amendment rights, a deception of the grand jury, and in violation of confidential marital communications between Natalyn and himself.

The district court rejected these same arguments in denying Kapnison's motions to quash the indictment and suppress tape recorded conversations. The court noted:

> Dismissal of an indictment for prosecutorial misconduct is appropriate in egregious circumstances where conduct has clearly crossed into the realm of deliberate misconduct, *United States v. Houghton,* 554 F.2d 1219 (1st Cir.1977). Defendants have not demonstrated the United States is guilty of misconduct. There was no showing whatsoever that Natalyn Kapnison was coerced into cooperating with the United States. Mrs. Kapnison testified she cooperated with the government voluntarily. No evidence was presented to the contrary. [R., Vol. I at 289].

■ We agree with the district court's finding that Natalyn testified voluntarily. We find the following testimony significant:

Q [Mr. Marchiondo, Attorney for Kapnison]. Your husband did not want a divorce, and wanted to remain married to you at that time, is that correct?

A [Natalyn Kapnison]. No, sir, that is not correct. And I might remind you, Billy, of the—

Q You call me Mr. Marchiondo for this trial, please.

A I'm sorry.

Q We know each other, do we not?

A Yes, sir.

Q I've known you for some 25 years?

A Yes. I didn't mean to be rude that way by calling you Billy, but if you remember the three-way conversation, this was before the grand jury, and I don't want to be offensive here in this courtroom, but Nick was on one phone, I was on another, and you were on another. And he says, "I've been trying to get rid of this so-and-so for 20 years, and now she wants a divorce when it's inconvenient."

And I pleaded with you to help me, that I was afraid. And you said, "Can't you both act like two adults?"

Q Let's get to the question, Mrs. Kapnison.

A So he was not trying to reconcile at that time, no, sir.

Q And even from that time on through January, through February and even

before the divorce, he tried to persuade you not to get a divorce, isn't that so?

A No, sir. At that time, he did not. I don't remember the exact dates, but when the grand jury subpoenaed me is when he started being nice.

[R., Vol. III at 83–84].

■ We reject Kapnison's contention that his wife's testimony before the grand jury and at trial was in violation of his privilege against adverse spousal testimony. Natalyn was properly allowed to testify under a grant of immunity from the government. This issue was resolved in *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). The *Trammel* Court said:

> When one spouse is willing to testify against the other in a criminal proceeding—whatever the motivation—their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony for the privilege to preserve. In these circumstances, a rule of evidence that permits an accused to prevent adverse spousal testimony seems far more likely to frustrate justice than to foster family peace. Indeed, there is reason to believe that vesting the privilege in the accused could actually undermine the marital relationship. For example, in a case such as this, the Government is unlikely to offer a wife immunity and lenient treatment if it knows that her husband can prevent her from giving adverse testimony. If the Government is dissuaded from making such an offer, the privilege can have the untoward effect of permitting one spouse to escape justice at the expense of the other. It hardly seems conducive to the preservation of the marital relation to place a wife in jeopardy solely by virtue of her husband's control over her testimony . . . .

## IV

Accordingly, we conclude that the existing rule should be modified so that the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying. This modification—vesting the privilege in the witness-spouse—furthers the important public interest in marital harmony without unduly burdening legitimate law enforcement needs.

445 U.S. at 52–53, 100 S.Ct. at 913–914 (footnotes omitted).

Thus, Natalyn's voluntary cooperation with the government, and her testimonial appearances before the grand jury and the trial jury were not in violation or derogation of Kapnison's fifth and sixth amendment rights. Even were we to assume, which we do not, that prosecutorial misconduct actually occurred, dismissal of the indictment would be nonetheless inappropriate. In *United States v. Drake*, 655 F.2d 1025 (10th Cir.1981), we stated:

> No actual prejudice to a fair trial for Drake is shown by the misconduct. We believe this case is controlled by *United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981), in which the Supreme Court held that dismissal based on a prosecutor's violation of a defendant's Sixth Amendment rights was improper.
>
> "[A]bsent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate. This has been the result reached where a Fifth Amendment violation has occurred, and we have not suggested that searches and seizures contrary to the Fourth Amendment warrant dismissal of the indictment. The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression."

665 F.2d at 1027, quoting *United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981).

Kapnison's allegation that Natalyn's testimony was in violation of confidential marital communications between Natalyn and himself is without merit. Before Natalyn testified, the district court made the follow-

ing preliminary ruling out of the presence of the jury:

> THE COURT: Well, right now, I'll tell you so you can be thinking about it, that I'm not going to let her testify as to anything that Mr. Kapnison related to her during the course of the marriage. She can testify as to acts. She can testify as to statements that were made in the presence of others and as far as your tape is concerned, it's going to have to be established conclusively that there was someone else present when the statement was made. She also may testify as to anything that she may have said, but not in a manner that would repeat what Mr. Kapnison had told her or would indicate the answer or statement that Mr. Kapnison had made to her. And this is my plan at this time. If you gentlemen want to think about it and talk about it in the morning, you can do so.

R. Vol. VII at p. 1262.

The district court strictly enforced this ruling. It is true, as Kapnison alleges, that Natalyn testified in detail relative to the splitting of loan fees between Bronstein, Harenberg, and himself. However, Natalyn testified as a participant, and not, as Kapnison alleges, on information acquired from him during the course of their marriage:

> Q. (Mr. Smith) Let me ask you if you took part in any loan practices engaged in jointly by Mr. Bronstein, Mr. Kapnison and Mr. Harenberg concerning loans and loan guaranty fees for loans issued through the First National Bank of Clovis?
>
> A. (Natalyn Kapnison) Yes, sir, I did.

R. Vol. VIII at pp. 1293–1294.

Thus, Natalyn acknowledged that she was an active participant in the loan fee scheme. Natalyn further testified in detail relative to: a meeting during the summer of 1979, attended by Bronstein, Harenberg, Kapnison, and herself, during the course of which she personally gave Bronstein and Harenberg each $6,666.00 as their share of a loan fee (R., Vol. VIII at p. 1300–1301);

her participation at six or seven meetings in which there was a three-way division of funds (R., Vol. VIII at p. 1302); a meeting between Bronstein, Harenberg, Kapnison, and herself during which she expressed concern over who would pay the taxes on the loan fees, since the Kapnisons were reporting the entire amount of the fees as income even though the fees were being split three ways (R., Vol. VIII at p. 1303); the fees being divided on a one-third basis so that Bronstein and Harenberg would not have to pay taxes on their share of the fees and so that "nobody would know about it, just the four of us" (R., Vol. VIII at p. 1305); her possession of a yellow paper which recorded the loans made through Bronstein and Kapnison from the First National Bank of Clovis and set forth the amount of the loans and the amount of the loan fees for Bronstein, Harenberg, and Kapnison (R., Vol. VIII at p. 1314). Natalyn also testified in detail relative to the manner in which she would withdraw large amounts of cash from her bank and thereafter distribute the cash to Bronstein and Harenberg for their pro rata share of the loan fees. Under such circumstances her testimony was admissible under the "crime-fraud" exception to the marital communications privilege recognized in conspiracy cases. When a husband and wife conspire, they form a "partnership in crime" and extrajudicial statements made in furtherance of the criminal activity may, by consent of the witness-spouse, be used against the other.

In *United States v. Price*, 577 F.2d 1356 (9th Cir.1978), *cert. denied*, 439 U.S. 1068, 99 S.Ct. 835, 59 L.Ed.2d 33 (1978), the witness-spouse's husband was prosecuted for transportation of women in interstate commerce for purposes of prostitution. The court held that where the husband and wife are engaged in a criminal conspiracy, extrajudicial statements of either made in furtherance of the conspiracy may be admitted against the other. The court agreed with Learned Hand's observation that when a husband and wife become involved in a partnership of crime what one does or says

pursuant to a common purpose, all do. *See also, United States v. Mendoza,* 574 F.2d 1373 (5th Cir.1978), *cert. denied,* 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978) (a crime in which the husband and wife were jointly involved did not prevent admission of conversations between them relative thereto, notwithstanding the marital communications privilege).

The Supreme Court, in *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), cautioned that all privileges should be construed narrowly. They are in derogation of the search for truth. Fed.R.Evid. 501 contains a congressional mandate that a privilege must be interpreted in the light of reason and experience. Thus, in *United States v. Entrekin,* 624 F.2d 597 (5th Cir.1980), *cert. denied,* 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 350 (1981), the court, while recognizing that confidential marital communications remain privileged after *Trammel, supra,* still indicated that the privilege does not apply where the conversations between the husband and wife were made in furtherance of conspiracy to commit mail fraud. Natalyn's testimony was clearly not in violation of the marital communications privilege under the facts herein.

## II.

■ Kapnison contends the district court erred in denying his motion for severance of the eighteen counts. Kapnison moved for a severance of counts some twelve days before trial. Although Kapnison acknowledges that the district court has the discretion to sever or not to sever, and that the counts could be properly joined under Fed. R.Crim.P. 8(a), 18 U.S.C.A., if they were part of a common scheme or plan, Kapnison argues that we should apply the more "enlightened" rule and find that such a trial of joined offenses is inherently prejudicial and should be avoided. Kapnison contends that in view of "the extreme difficulty in segregating the evidence as it related to various counts of the indictment," his motion for severance should have been granted. [Appellant's Brief at 40].

We hold that the district court did not err in refusing to sever the counts. The counts were properly joined under Fed.R. Crim.P. 8(a), 18 U.S.C.A., as they were "based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Furthermore, Kapnison has failed to establish that the refusal to sever the counts was prejudicial. In *United States v. Valentine,* 706 F.2d 282, 289–90 (10th Cir.1983), we noted:

"[t]he decision to grant a severance is within the sound discretion of the trial court and its decision will not ordinarily be reversed in the absence of a strong showing of prejudice." *United States v. Strand,* 617 F.2d 571, 575 (10th Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980). The burden of the defendant to show an abuse of discretion in this context is a difficult one. *United States v. Van Scoy,* 482 F.2d 347 (10th Cir.1973).

We feel, however, that there was no essential unfairness when the relationship of the charges grew out of the defendant's own conduct. Moreover, the mere fact that a defendant may have a better chance for acquittal by separate trials of charges is not sufficient to require severance.

## III.

■ Kapnison contends that he was prejudiced by extensive pretrial publicity which tainted the jury panel. Kapnison argues that although his trial was moved from Albuquerque to Roswell, Harenberg's conviction three weeks prior to his trial generated extensive and far-reaching publicity prejudicial to his case, necessitating individual voir dire of the jury panel. Kapnison argues that the brief individual examination of the prospective jurors by the district court, at the bench, was inadequate. We disagree.

Kapnison's trial was moved from Albuquerque to Roswell at his request. Kapnison did not object to being tried in Roswell until nine days prior to his trial, after Har-

enburg had been convicted. Thereafter, during the course of voir dire in Kapnison's case, the district court individually questioned each of the prospective jurors who indicated they had read or heard about the lawsuit. These inquiries were conducted on an individual basis, at the bench, out of the hearing of the other jurors. Kapnison contends that the individual questioning by the court was too brief and inadequate to assure that he was not unfairly prejudiced by the publicity surrounding his trial.

The record before us reflects very clearly the district court's sensitivity to the publicity surrounding the case and the most adequate manner in which the court questioned the fourteen prospective jurors who indicated they had read or heard about the case. In so doing, the court fulfilled its obligation under Fed.R.Crim.P. 21(a), 18 U.S.C.A., to determine whether "there exists in the district where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial." We hold there was a reasonable basis for concluding the jury was fair and impartial, and, hence, there was no requirement that the trial be moved because of adverse pretrial publicity. *See United States v. Hueftle,* 687 F.2d 1305, 1310 (10th Cir.1982).

### IV.

Kapnison contends his right to a fair trial was violated by the selective enforcement of the marital privilege regarding confidential communications. Kapnison argues that he "stands convicted of 17 criminal counts as the result of the testimony of Natalyn Kapnison, his former wife" and that Natalyn "both violated the privilege in her testimony and used it to shield herself from legitimate inquiry during cross-examination." [Appellant's Brief at 46–47].

As set forth in part I. of this opinion, *supra,* Natalyn voluntarily testified under a grant of immunity from the United States. Under *Trammel v. United States, supra,* her testimony was admissible since

"the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying." 445 U.S. at 53. Furthermore, Natalyn's testimony arose as a result of her participation in an on-going conspiracy, not as a result of a marital relationship. Natalyn's testimony was, accordingly, properly admitted, under the "crime-fraud" exception privilege to the marital communications privilege discussed *supra* in I.

### V.

Kapnison contends that the charts and summary testimony of the government's expert witness, I.R.S. Agent B.W. Wilson, improperly emphasized and repeated evidence produced by the government, unlawfully bolstered the credibility of the government's witnesses, and violated his right to a fair trial.

Prior to testifying, Agent Wilson was determined by the district court to be qualified as an expert in tax matters and in the preparation of tax returns. In testifying and presenting the charts objected to, Agent Wilson summarized the numerous government exhibits[1] and the testimony of certain witnesses. In doing so, Agent Wilson specifically stated that he was summarizing the government's case based on the testimony and physical evidence before the court, and that he was not vouching for the truthfulness of the prior testimony or the accuracy of the physical evidence. The district court also thoroughly and carefully instructed the jury that an expert's opinion was to be afforded only such weight as they felt it deserved, and they could disregard the expert's opinion entirely. In addition, the jury was instructed that the charts and Agent Wilson's summary of the evidence were not evidence, but merely summaries, the accuracy and reliability of which were to be determined by the testimony and exhibits admitted into evidence. Under these circumstances, we hold that

---

1. "Over six dozen government exhibits consisting almost exclusively of documents and records, frequently in many dozen pages." Government's Brief at 27.

the charts and summary testimony of Agent Wilson were properly admitted.

The use of summaries is proper. *United States v. Kaatz*, 705 F.2d 1237 (10th Cir. 1983); Fed.R.Evid. 1006. Summaries may be properly put before a jury with limiting instructions. *United States v. Kaatz, supra; United States v. Scales*, 594 F.2d 558 (6th Cir.1979), *cert. denied*, 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979).

Kapnison does not contend that the charts were false or that the court's limiting instructions relative to the charts and Agent Wilson's testimonial summary were inadequate or that the jury failed to understand or follow the instructions. Nor does Kapnison contend that Agent Wilson testified falsely or that he (Kapnison) was unable to properly and adequately voir dire Agent Wilson relative to his tax expertise, or adequately cross-examine him. Rather, Kapnison merely summarily argues that the charts and testimony of Agent Wilson improperly emphasized and repeated the government's evidence and unlawfully bolstered the credibility of the government witnesses.

We reject such an argument. Kapnison was represented by able counsel who vigorously cross-examined Agent Wilson. Contrary to Kapnison's underlying contention, charts and testimony of summary witnesses are admissible under the conditions and circumstances of this case. *See also United States v. Behrens*, 689 F.2d 154 (10th Cir.1982), *cert. denied*, 459 U.S. 1088, 103 S.Ct. 573, 74 L.Ed.2d 934 (chart may be introduced to aid jury in organizing evidence); *United States v. King*, 616 F.2d 1034 (8th Cir.1980), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980) (testimony of summary witness may be received so long as she bases her summary on evidence received in the case and is available for cross-examination).

## VI.

■ Kapnison contends the district court erred by refusing to allow him to introduce the deposition testimony of Bronstein.

Prior to Kapnison's trial, Bronstein filed an affidavit in which he stated that if called to testify he would invoke his fifth amendment privilege and refuse to testify on behalf of Kapnison. The government conceded that under such circumstances, Bronstein was "unavailable" under Fed.R.Evid. 804(a)(1).

During his trial, Kapnison attempted to offer a deposition of Bronstein as substantive evidence. The deposition was taken during the course of a civil action brought by Bank against a borrower who had acquired his loan by paying a kickback to Kapnison, Harenberg, and Bronstein, and who had subsequently defaulted on the loan. Within the deposition, Bronstein repeatedly denied working on the loan or receiving any benefit, consideration, value, or money in connection with the making of the loan. Bronstein's deposition corroborated Kapnison's trial testimony. The district court refused to allow Kapnison to introduce the deposition.

Kapnison argues that the deposition should have been admitted even though the United States did not have the opportunity to cross-examine Bronstein during the deposition, because Bronstein was cross-examined during the civil trial. Kapnison contends that because Bronstein was cross-examined and in view of the identity of facts, issues, and interests in his criminal case and the civil case, the deposition had adequate indicia of reliability under *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and was admissible. We hold the district court properly excluded the deposition.

Bronstein's deposition was not admissible under Fed.R.Evid. 804(b)(1) when, as here, the United States did not have the opportunity to cross-examine him. Rule 804(b)(1) provides in part:

(b) *Hearsay exceptions. The following are not excluded by the hearsay rule* if the declarant is unavailable as a witness:

(1) *Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding,*

*or in a deposition* taken in compliance with law in the course of the same or another proceeding, *if the party against whom the testimony is now offered,* or, in a civil action or proceeding, a predecessor in interest, *had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.* [Emphasis supplied].

Since the government, as the "party against whom the testimony is now offered," has never had the "opportunity to develop the testimony [of Bronstein] by direct, cross or redirect examination," the district court correctly refused to allow the introduction of the deposition. Kapnison is simply seeking to introduce depositional testimony without cross-examination. This is not a *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), situation in which a witness' preliminary hearing statements were held admissible at trial:

> Porter's statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial. Porter was under oath; respondent was represented by counsel—the same counsel in fact who later represented him at the trial; respondent had every opportunity to cross-examine Porter as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings.

399 U.S. at 165, 90 S.Ct. at 1938.

Nor does the taking of Bronstein's deposition in an unrelated civil action give rise to any "indicia of reliability" for purposes of its introduction in a criminal proceeding against Kapnison. As the Court opined in *Ohio v. Roberts, supra* 448 U.S. at 65–66, 100 S.Ct. at 2539:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of relia-

bility." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness. [Footnotes excluded].

## VII.

 Kapnison contends the district court erred in allowing the government to cross-examine Harenberg about the "Carlucci transaction" and that the admission of the evidence gave rise to "unfair prejudice" in violation of Fed.Rules Evid.Rule 403, 28 U.S.C.A.

Harenberg testified on behalf of Kapnison. He generally denied any wrongdoing. Thereafter, during the course of cross-examination, in an attempt to discredit Harenberg, the government questioned him about the "Carlucci transaction." In response to questioning by the government, Harenberg acknowledged that he participated in opening a savings account for a Mr. Carlucci, that the account was opened with $53,000 in cash which Bronstein gave him, that he later withdrew $23,000 in cash from the account upon instructions from Bronstein, and that he delivered the $23,000 to Mr. Carlucci in Bronstein's office where he met him for the first time.

At the conclusion of the government's cross-examination of Harenberg, the court cautioned the jury:

> You may step down for the afternoon. This testimony that you have just heard about the Carlucci account did not involve money that either Mr. Kapnison or Mr. Harenberg or Mr. Bronstein were dealing with. It was money that belonged to Mr. Carlucci. They never had any use of it, never made any claim on it of any kind or character. The evidence is offered to you only for the purpose of showing the management and control of the bank on this particular occasion and how they handled this particular deposit. And you should consider it for no other

purpose. The cash, itself, has nothing whatever to do with this lawsuit. R., Vol. XII at 2477–78.

We hold that the error, if any, generated by the government's cross-examination of the "Carlucci transaction" was corrected by the district court's cautionary charge and that Kapnison's argument that Harenberg's cross-examination was prejudicial and gave rise to reversible error under Rule 403 is without merit. Harenberg testified in Kapnison's defense and generally denied any wrongdoing. Under such circumstances, Harenberg was open to cross-examination relative to his association with Kapnison and the manner in which he functioned as president of Bank, including the "Carlucci transaction," *United States v. Tisdale,* 647 F.2d 91 (10th Cir.1981); *United States v. Calabrese,* 645 F.2d 1379 (10th Cir.1981); *United States v. Logan,* 641 F.2d 860 (10th Cir.1981); Fed.Rules Evid. Rule 404(b), 28 U.S.C.A.

## VIII.

■■■ Kapnison contends that prosecutorial misconduct occurred during closing arguments when the Assistant United States Attorney argued that Kapnison, Harenberg, and Bronstein had "robbed the bank as surely as if they had used a gun" [R., Vol. XIV at 2799] and made repeated similar references to the use of a gun. Kapnison also contends that a second Assistant United States Attorney compounded the error in rebuttal closing argument by injecting his personal belief in the guilt of Kapnison. We disagree. We hold that the comments objected to did not give rise to reversible error.

This is not a case in which the prosecutor has expressed his or her personal beliefs concerning the evidence or witnesses, *United States v. Gabriel,* 715 F.2d 1447 (10th Cir.1983), nor a case in which the prosecutor stated his personal belief that the defendant was guilty. *United States v. Ainesworth,* 716 F.2d 769 (10th Cir.1983). In *Ainesworth* we reviewed the conditions under which prosecutorial misconduct dur-

ing closing argument could give rise to reversible error:

Allegations of prosecutorial misconduct implicate the due process rights of a defendant. *United States v. Carleo,* 576 F.2d 846, 851 (10th Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 153, 58 L.Ed.2d 152 (1978). Due process will not permit a prosecutor to use his closing argument to testify to a jury. *United States v. Segal,* 649 F.2d 599, 604 (8th Cir.1981); *United States v. Latimer,* 511 F.2d 498, 503 (10th Cir.1975). Thus, he may not, without qualification, express his personal opinion as to certain evidence or that the accused is guilty of the crime charged. *Segal,* 649 F.2d at 604; *United States v. Rios,* 611 F.2d 1335, 1343 (10th Cir.1979). Similarly, he may not mention facts not in evidence to support a finding of guilt, *Latimer,* 511 F.2d at 503; *Marks v. United States,* 260 F.2d 377, 383 (10th Cir.1958), *cert. denied,* 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302 (1959), he may not personally attest to the credibility of government witnesses or attack the credibility of defense witnesses, *Carleo,* 576 F.2d at 852; *United States v. Ludwig,* 508 F.2d 140, 143 (10th Cir.1974), nor may he place his own integrity and credibility in issue. *Latimer,* 511 F.2d at 503; *Ludwig,* 508 F.2d at 140; *United States v. Perez,* 493 F.2d 1339, 1343 (10th Cir. 1974).

716 F.2d at 771.

Kapnison's challenges to the prosecutor's closing argument comments are without merit. Nor did the prosecutor's repeated references[2] to the commission of a crime, just as "if a gun were used," give rise to reversible error. Every slight excess of the prosecution does not require that a verdict be overturned and a new trial ordered. *United States v. Coppola,* 526 F.2d 764 (10th Cir.1975) [quoting *Aiuppa v. United States,* 393 F.2d 597 (10th Cir.1968), *cert. denied,* 404 U.S. 871, 92 S.Ct. 60, 30 L.Ed.2d 114 (1971)].

**2.** Kapnison sets forth three references to the use of the word "gun."

## IX.

Kapnison contends that the district court improperly instructed the jury and thereby prejudiced his right to a fair trial. We disagree. We have reviewed the instructions in detail and hold that the district court adequately and properly instructed the jury. The district court instructed on Kapnison's defenses, and although the wording of the instructions may not have paralleled Kapnison's proffered instructions, the instructions of the district court were adequate. In *United States v. Jenkins*, 701 F.2d 850 (10th Cir.1983), we stated:

> Where there is evidence in the record supporting his theory, a defendant in a criminal case is entitled to an instruction to the jury concerning his theory of defense and failure to so instruct is reversible error. *See United States v. Felsen*, 648 F.2d 681, 685–86 (10th Cir.1981), *cert. denied*, 454 U.S. 861, 102 S.Ct. 317, 70 L.Ed.2d 159 (1981); *United States v. Posey*, 647 F.2d 1048, 1052–53 (10th Cir. 1981); *United States v. Hoopes*, 545 F.2d 721 (10th Cir.1976), *cert. denied*, 431 U.S. 954, 97 S.Ct. 2675, 53 L.Ed.2d 270 (1977). However the instructions submitted by defendant need not be given in the form requested, if the issues of the case are adequately covered in the charge. *United States v. Nolan*, 551 F.2d 266, 274–75 (10th Cir.1977), *cert. denied*, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977); *United States v. Newson*, 531 F.2d 979, 983 (10th Cir.1976). The sufficiency of the instructions is not determined by the giving or omission of particular instructions but by viewing the charge as a whole. *United States v. Burns*, 624 F.2d 95, 105 (10th Cir.1980), *cert. denied*, 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980); *United States v. Westbo*, 576 F.2d 285, 289 (10th Cir.1978); *United States v. Beitscher*, 467 F.2d 269, 273 (10th Cir.1972).

701 F.2d at 858.

## X.

Kapnison contends that the evidence was insufficient to warrant a conviction on Counts V, VI, VIII, X, XII, XIV,[3] XV, XVI, XVII, and XVIII, under which he was charged with violating 18 U.S.C.A. § 215[4] (Section 215) and 18 U.S.C.A. § 656[5] (Section 656). Kapnison does not challenge the sufficiency of the evidence as to Counts VI, IX, XI, and XIII under which he was charged with violating Section 215.

In *United States v. Twiford*, 600 F.2d 1339, 1343 (10th Cir.1979), we set forth the statutory elements of both a section 656 and a section 215 violation:

> The statutory elements of a section 656 misapplication violation are: (1) the willful (2) misapplication (3) of money, funds, or credits (4) of a federally protected bank ... the elements of a section 215 offense are: (1) the receiving or consenting to receive (2) a fee, commission, gift, or thing of value (3) for procuring or attempting to procure (4) a loan (or cer-

---

**3.** We decline to speculate why Kapnison challenges the sufficiency of the evidence on Count XIV, of which he was acquitted.

**4.** Section 215 provides in part:

Whoever, being an officer, director, employee, agent, or attorney of any bank, the deposits of which are insured by the Federal Deposit Insurance Corporation, ... except as provided by law, stipulates for or receives or consents or agrees to receive any fee, ... for procuring or endeavoring to procure for such person, firm, or corporation, or for any other person, firm, or corporation, from any such bank or corporation, any loan ... shall be fined not more than $5,000 or imprisoned not more than one year or both.

**5.** Section 656 provides in part:

Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, ... embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both;
...

tain other benefits) from a federally protected bank.

In reviewing Kapnison's challenge to the sufficiency of the evidence, we must view all the evidence, both direct and circumstantial in the light most favorable to the government, *United States v. Massey*, 687 F.2d 1348 (10th Cir.1982); *United States v. Blitstein*, 626 F.2d 774 (10th Cir.1980), *cert. denied*, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981), to determine if the government established Kapnison's various violations of section 215 and section 656.

Kapnison contends that Counts V and VI should have been dismissed because the government failed to prove that he "procured" a loan under section 215 or that there was a "willful misapplication" of funds under section 656. We disagree. The testimony of Dr. Goodman [R., Vol. V at 593–641] adequately provides the evidence for that which Kapnison characterizes as an "absolute failure of proof" under Counts V and VI.

Kapnison's remaining allegations of error vis-a-vis insufficiency of the evidence are similarly rebutted by our review of the record. Having carefully reviewed the record in accordance with *United States v. Massey, supra*, we hold the evidence was sufficient.

### XI.

■ Kapnison's allegation that the kickbacks he received were not Bank's funds but the funds of the individual borrowers, and that he accordingly could not be convicted of the willful misapplication of bank funds is specious. *See United States v. Twiford, supra; United States v. Cooper*, 464 F.2d 648 (10th Cir.1972), *cert. denied*, 409 U.S. 1107, 93 S.Ct. 901, 34 L.Ed.2d 688 (1973); *United States v. Fortunato*, 402 F.2d 79 (2nd Cir.1968), *cert. denied*, 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969).

WE AFFIRM.

LOGAN, Circuit Judge, concurring:

I join in the court's opinion except insofar as it relies upon a crime-fraud exception to the marital confidential communications privilege. I would not limit that privilege for the reasons stated in my concurring opinion in *United States v. Neal*, 743 F.2d 1441 (10th Cir.1984), entered this day. However, I believe the trial court here properly applied the confidential communications privilege. I therefore agree that the conviction should be affirmed.

JENKINS, District Judge, concurring:

I concur in the judgment of the court. The principle in this case is the same as that set forth in *United States v. Neal*, 743 F.2d 1441 (10th Cir.1984) entered this day. As suggested in my concurring opinion in *Neal*, before one may apply an exception to a rule against the disclosure of a confidential marital communication one must first decide that the disclosure is in fact such a communication. In my opinion the testimony received in this case is not such a disclosure and thus the question of Crime/Fraud exception need not be reached.

As to the remaining issues, I concur in the court's opinion.