UNITED STATES of America, Plaintiff,

v.

John HUDSON, Larry Baresel, and Jack Butler Rackley, Defendants.

No. CR–92–152–T.

United States District Court, W.D. Oklahoma.

Dec. 16, 1994.

James A. Rolfe, Dallas, TX, and Lynn Pringle, Pringle & Pringle, Oklahoma City, OK, for Larry Baresel.

Barbara Poarch and Tim Ogilvie, Asst. U.S. Attys., Oklahoma City, OK, for plaintiff U.S.

Drew Neville, B.J. Rothbaum, Linn & Helms, Oklahoma City, OK, for John Hudson.

C. Merle Gile, Oklahoma City, OK, for Jack Butler Rackley.

## ORDER

RALPH G. THOMPSON, District Judge.

Before the court is the motion of defendants John Hudson, Larry Baresel and Jack Butler Rackley to dismiss the August 1992 indictment for criminal law violations of 18 U.S.C. §§ 2, 371, 656 and 1005. Defendants were alleged to have violated those statutes by mismanagement and illegal operation of several banks. These violations were based on the same lending transactions which were the subject of prior administrative sanctions imposed against defendants by the Office of the Comptroller of the Currency ("OCC"). The OCC action culminated in the execution by defendants of a Stipulation and Consent Order ("Consent Order") which, *inter alia*, prohibited defendants from future participation in banking activities and imposed monetary fines for alleged federal law violations.

Defendants moved to dismiss the indictment on the grounds that it constitutes punishment for the same conduct which was the subject of the Consent Order and therefore violated the double jeopardy clause. This court denied that motion, finding that the Consent Order contained a knowing and voluntary waiver of the defendants' double jeopardy claim. The court further found that, in any event, the sanction prohibiting participation in banking activities and the fines were not punitive measures encompassed by the double jeopardy clause.

Defendants appealed that decision to the Tenth Circuit Court of Appeals, which affirmed in part and reversed and remanded for further action. *United States v. Hudson,* 14 F.3d 536 (10th Cir.1994). The Tenth Circuit reversed the determination that the Consent Order included a waiver, but affirmed the decision that the prohibition against future participation in banking activities was not punitive. 14 F.3d at 539, 541. The Tenth Circuit reversed the decision that monetary sanctions were not punitive and, remanded the action for further consideration of the effect of the monetary fines. *Id.* at 542–43. The court has held an evidentiary hearing and the parties have submitted additional briefs on the issues presented. The question before the court on remand is whether the Consent Order monetary sanctions and the indictment address the same conduct by defendants and, if so, whether the monetary sanctions imposed by the OCC are remedial or punitive.

Double jeopardy rights arise where an individual is punished twice for the same conduct or offense. The test to be applied to determine whether there are two offenses or only one is whether each provision "requires proof of an additional fact which the other does not." *Burke v. Board,* 940 F.2d 1360, 1367 (10th Cir.1991), *citing Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). If the same offense results in criminal punishment and civil money penalties, multiple punishments exist for purposes of double jeopardy where "a civil penalty [is] so extreme and so divorced from the government's damages and expenses as to constitute punishment." *Burke,* 940 F.2d at 1367, *citing United States v. Halper,* 490 U.S. 435, 442, 109 S.Ct. 1892, 1898, 104 L.Ed.2d 487 (1989).

The OCC charged defendants with participating in a plan to have banks with which they were associated make nominee loans to nominal borrowers in a manner which allowed defendants to receive the benefit of the loans. The OCC asserted that this resulted in violations of the statutory restrictions regarding lending limits, those concerning loans to officers, directors or other controlling persons of banks, and the statutes requiring accurate recordation of loans on the books of national banks. The monetary sanctions were imposed by the OCC pursuant to the authority granted by 12 U.S.C. § 93(b) and 504, as well as 12 U.S.C. §§ 84 and 375a and 375b. In the indictment at issue, defendants are charged with, *inter alia,* violations of 18 U.S.C. § 656, which prohibits misapplication of bank funds. The government concedes that the violations which were the subject of the Consent Order and those charged in the indictment are based on the same loan transactions. However, the government argues that different statutes are involved and, accordingly, different offenses are at issue for double jeopardy purposes. Defendants argue that, if the OCC proved the allegations which were the

subject of a Consent Order, that same proof would also establish a violation of 18 U.S.C. § 656, the statute charged in the indictment.

■ A review of the evidence establishes that, for double jeopardy purposes, the Consent Order and the indictment involve the same conduct. As defendants correctly note, a violation of the statutes under which the OCC proceeded in the Consent Order necessarily encompasses a violation of 18 U.S.C. § 656. *United States v. Twiford*, 600 F.2d 1339, 1343–44 (10th Cir.1979). *See also United States v. Davis*, 953 F.2d 1482, 1492 (10th Cir.1992). The broad range of conduct prohibited by 12 U.S.C. § 93(b) and § 504 necessarily encompasses the conduct which is the subject of 18 U.S.C. § 656. Furthermore, the same loan transactions are the subject of both the indictment and the Consent Order. As a result, this case is distinguishable from *Burke*, where the court determined double jeopardy was not violated because a cease and desist order addressed conduct occurring at a time different from that at issue in the challenged indictment. 940 F.2d at 1367.

■ Because the same conduct is addressed in the indictment and the Consent Order, the court must next determine whether the punishment imposed under the civil penalty is sufficient to invoke double jeopardy protection against the subsequent indictment. Double jeopardy does not apply where the civil penalty at issue is *solely* remedial, but applies if that penalty is also partially designed to punish. *Austin v. United States*, —— U.S. ——, ——, 113 S.Ct. 2801, 2802, 125 L.Ed.2d 488 (1993); *Hudson*, 14 F.3d at 540. It is not sufficient to show only that the statute authorizing the sanctions has a remedial purpose; rather, the sanctions themselves must be solely remedial. *Hudson*, 14 F.3d at 542. Furthermore, the government must identify the precise injury to the government which the sanction is designed to remedy and provide an accounting of the actual losses on which the sanctions are based. *Id.* If there is no injury to be remedied, the fines presumably were imposed to deter defendants from continued violations of the banking laws and, as a result, are punitive in nature. If there was

an injury, then the fines must be imposed solely to remedy that injury to avoid double jeopardy. A civil penalty is generally punitive where it is overwhelmingly disproportionate to the damages caused. *United States v. Bizzell*, 921 F.2d 263, 267 (10th Cir.1990), *citing Halper*, 490 U.S. at 449, 109 S.Ct. at 1902. However, a fine may be punitive even if it is reasonably related to the loss. *Hudson*, 14 F.3d at 543.

■ In this case, the government contends that the OCC fines were solely remedial. The evidence establishes that the OCC alleged the defendants collectively caused more than $900,000 in losses. Initially, the OCC recommended a $100,000.00 civil penalty against Hudson and $75,000.00 penalties against both Baresel and Rackley. It also recommended prohibiting their future participation in banking. Daniel Stipano of the Enforcement and Compliance Division of the OCC testified that he endorsed that recommendation. In his recommendation, Stipano stated that the OCC could "accomplish a great deal by preventing these individuals from ever re-entering the banking industry and, through publicity of these actions, hopefully deter other individuals from similar conduct." Defendants' Exhibit 3, numbers 127–28. That conclusion was consistent with the OCC policy and procedures manual in effect at the time the penalties were imposed in this case. The manual contains guidelines for sanctions, including civil money penalties. According to the manual, a civil money penalty can serve as a "deterrent to similar violations by the persons against whom the penalties are assessed and by other banks and bankers." The manual also provided that public disclosure of civil money penalties "may serve as a deterrent to future violations." Government Exhibit 21, pages 1, 3.

The evidence also reflects that the amount of the monetary penalties imposed on defendants was determined by use of the OCC "civil money penalty matrix." This was referred to as a "CMP matrix," and was used to determine the relative degree of severity of violations by assigning weight to certain factors which were to be considered when determining the amount of the penalty. Government Exhibit 21 at page 2. The factors

considered included intent, number of violations and concealment of violations. Injury to the government was not listed as a factor on the CMP matrix. The evidence before the court does not indicate that injury to the government was considered by the OCC in deciding the amount of the penalties to be imposed. Defendants' Exhibit 4. Mr. Stipano testified that the OCC did not have the legal authority to use its enforcement powers to compel officers and directors to make restitution under the statutory provisions in existence at the time the penalties were assessed.

The only evidence regarding government losses is that reflecting the OCC's investigative costs in this case which total approximately $72,000.00. However, the record contains no indication that these costs were considered by the OCC in determining the recommended fines of $100,000.00 against Hudson and $75,000.00 each against Baresel and Rackley. The total of these fines is also substantially greater than the investigative costs. Although the fines were subsequently reduced,[1] the evidence reflects that the reduction was based on the defendants' respective financial circumstances. No evidence suggests that the reduction was related to an assessment of government losses. The evidence establishes that the OCC monetary assessments against the defendants were not solely remedial. Assuming, *arguendo*, that these had some remedial purpose, the evidence establishes that they were at least partially designed to serve as a deterrent. Thus, the fines were punitive for double jeopardy purposes.

In accordance with the evidence before the court and the factors to be considered in determining whether double jeopardy is at issue, the indictment addresses the same conduct as the OCC Consent Order. Further, the monetary penalties imposed by the Consent Order are not solely remedial but are punitive in nature. Accordingly, proceeding with the indictments would subject defendants to double jeopardy, and the motion to dismiss the indictments is GRANTED.

IT IS SO ORDERED.

---

1. Hudson was ultimately fined $16,500.00, while Baresel was fined $15,000.00 and Rackley was fined $12,500.00.