7 F.3d 1045
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Tomie L. BELCHER, Defendant-Appellant.
 Nos. 92-3248, 92-3287.
 United States Court of Appeals, Tenth Circuit.
 Opinion withdrawn from bound volume; for superseding order
on rehearing filed December 14, 1993, see 1993 WL 556770.
Sept. 3, 1993.
 
 D.Kan., D.C. No. 92-40038-R D.C. No. 92-40038-01-R.
 Before EBEL, Circuit Judge, RONEY, Senior Circuit Judge,** and KELLY, Circuit Judge.
 ORDER AND JUDGMENT*
 RONEY, Circuit Judge.
 
 
 1
 Tomie L. Belcher appeals a conviction on four counts of submitting tax returns containing false statements under 26 U.S.C. § 7206(1), alleging insufficient evidence to support the conviction, trial errors in evidentiary rulings and jury instructions, and an erroneous setting of his offense level for sentencing. We affirm.
 
 
 2
 In 1979, Belcher entered into an agreement with Tony's Pizza Service ("Tony's") to purchase used fryer oil and haul away other bakery waste for Tony's. Tony's later began paying Belcher to take the bakery waste away. Belcher then sold the oil and bakery waste (called "hog slop") to farmers as a feed supplement. The hog slop is used as feed supplement for lactating sows. When sows lactate, they substantially decrease their food intake. The high caloric value of waste and oil compensate for the calories lost by the decreased intake.
 
 
 3
 Payments for the hog slop were made to one of six company names created by Belcher. None of the companies filed tax returns for any year nor were they registered to do business anywhere in the United States. Belcher did not report the income from the sale of the hog slop on his individual tax return.
 
 
 4
 In 1991, a grand jury indicated Belcher on four counts of making false income tax returns in violation of 26 U.S.C. § 7206(1). The charges were based on Belcher's tax returns for the years 1985, 1986, 1987 and 1988. The Government concluded that the taxes due and owing for the four years totaled approximately $80,000.
 
 SUFFICIENCY OF THE EVIDENCE
 
 5
 Belcher argues that the evidence was insufficient to support his convictions in two ways. First, he alleges that the Government produced no evidence showing that he controlled the various accounts at issue and was the correct taxpayer.
 
 
 6
 At trial, Belcher defended the case on the ground that his son, Terry Belcher, and his wife, Bonnie Belcher, were the persons who produced the income. Persons associated with Tony's Pizza testified and persons who purchased the hog slop testified, however, that they believed that they dealt exclusively with Belcher. Neither Terry Belcher nor Bonnie Belcher reported income from this activity on their own tax returns during the four-year period in question. This evidence was sufficient to support a jury verdict that Belcher received the hog slop income.
 
 
 7
 Second, Belcher argues that the Government brought a taxable income action, but treated the case as if he had been charged with failure to report gross income instead of failure to report taxable income. Because the district court did not allow evidence regarding his legitimate business deductions, Belcher argues, the evidence was insufficient to convict him of under-reporting his taxable income.
 
 
 8
 Belcher was charged with violating 26 U.S.C. § 7206(1) which states in relevant part:
 
 
 9
 Any person who--
 
 
 10
 (1) Declaration under penalty of perjury.--Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter ...
 
 
 11
 shall be guilty of a felony....
 
 
 12
 26 U.S.C.A. § 7206(1) (1986). This section makes filing a false return criminal regardless of whether it is false related to gross or taxable income. The criminal act of under-reporting gross income is not cured by the existence of corresponding unreported deductions. United States v. Lassiter, 819 F.2d 84, 88 (5th Cir.1987). The return remains false because of the omission.
 
 
 13
 After presenting the evidence that Belcher received income from the hog slop sales, the Government presented Belcher's tax returns for the relevant years which did not report income generated from the hog slop operation. Viewed in the light most favorable to the Government, Higgins v. Martin Marietta Corp., 752 F.2d 492, 498 (10th Cir.1985), this evidence was sufficient to prove that Belcher filed a false tax return.
 
 EVIDENTIARY ERRORS
 
 14
 Belcher argues that the trial court erred in allowing IRS Special Agent Don Ernst and IRS Agent Mike Douglas to testify about tax laws and Belcher's tax liability and in admitting through their testimony summaries of exhibits of bank records.
 
 
 15
 Belcher argues that neither Ernst nor Douglas were offered or accepted as expert witnesses and should not have been allowed to testify to matters as experts. Nevertheless, the backgrounds of both witnesses were explored before they testified and the court stated that it was satisfied with Ernst's qualifications and allowed Douglas to testify after presentation of his qualifications. The trial court's decision to admit the testimony was not an abuse of discretion. Quinton v. Farmland Indus., Inc., 928 F.2d 335, 336 (10th Cir.1991). In any event, any possible error was harmless because Ernst's and Douglas' testimony was duplicated by two experts whose testimony Belcher does not challenge.
 
 
 16
 As to the summaries of exhibits of bank records, Belcher argues that the evidence was misleading and prejudicial. Belcher points out that some of the summaries contained lists of witnesses who supported the Government's position, and summaries of the witness' supporting evidence. The crux of Belcher's argument is that the summaries unlawfully highlighted and restated the Governments evidence and strengthened the credibility of the Government's witnesses. This court has expressly rejected such an argument. United States v. Kapnison, 743 F.2d 1450, 1458 (10th Cir.1984). The Kapnison court concluded that when the jury is told that the testimony is a summary of the Government's case and the witness is subject to cross-examination and the court gives a limiting instruction, admission of the evidence is proper. Kapnison, 743 F.2d at 1457-58. Because both Ernst and Douglas stated at the outset that their testimony was based on evidence already presented, they were cross-examined extensively, and Belcher did not suggest a limiting instruction or object to the lack thereof, use of the summaries was proper.
 
 JURY INSTRUCTIONS
 
 17
 Belcher claims error in several of the jury instructions. Read as a whole, the instructions did not misstate the law, confuse the jury or cause prejudice to Belcher. United States v. Caro, F.2d 1548, 1550 (10th Cir.1992).
 
 
 18
 Specifically, Belcher claims that Instruction No. 9 was erroneous because it contemplates a case based on false reporting of gross income, which was not the charge in this case. On the contrary, Instruction No. 9 merely told the jury how to determine whether a particular individual is required to file a tax return.
 
 
 19
 Belcher claims that Instruction No. 13 was erroneous because it stated that the existence of deductions, although relevant to the issue of the defendant's good faith, did not eliminate the obligation to report income. Instruction No. 13 is an accurate statement of the law. Failure to report income is not cured by failure to report deductions.
 
 
 20
 Belcher argues that Instruction No. 16, a stock instruction stating that the defendant could be found guilty even if the jury believed that other persons were also guilty, was confusing and prejudicial. A significant theory relied upon by Belcher was that he was not the correct taxpayer to be charged. Instruction No. 16 was especially appropriate in light of the defense's testimony attempting to show that other members of Belcher's family were the actual parties involved in the hog slop business.
 
 
 21
 Belcher argues that Instruction No. 19, a standard expert instruction, was improper because no experts were proffered or qualified. As discussed above, the district court acted within its discretion in treating the IRS agents as experts.
 
 
 22
 A central objection that permeates Belcher's assertion of errors in instructions and evidentiary rulings is that the jury was not given the opportunity to consider legitimate business deductions which offset his gross income from the hog slop operation. But Belcher's tax returns not only under-reported his taxable income, they disavowed any connection with the hog slop business. By failing to report the substantial sums that the evidence showed he received from the sale of hog slop, Belcher was guilty of filing false returns even if, as he claimed, he was entitled to still more substantial deductions. United States v. Lassiter, 819 F.2d 84 (5th Cir.1987).
 
 SENTENCING
 
 23
 Belcher was sentenced under U.S.S.G. § 2T1.3(a) (Nov. 1991), which focuses the offense level on the amount of tax loss that results from the crime. The court applied subsection (1) of that guideline, finding that Belcher's offense of filing a false tax return was committed in order to facilitate evasion of tax. Referring, as directed, to the table in § 2T4.1, the court determined that because the amount of the tax loss was $88,595.42, subsection (G) of the table applied, resulting in a base offense level of 12. This gave an imprisonment range of 10-16 months, and the court sentenced Belcher to 12 months imprisonment on each of the four counts, to run concurrently.
 
 
 24
 Belcher argues that the court erred in finding that his offense of "false statement on tax return" was "committed in order to facilitate evasion of a tax" within the meaning of § 2T1.3. In any event, he claims that his offense level should have been 6, with an imprisonment range of 0-6 months, arguing that the Government failed to prove any tax loss in excess of $2,000. He also argues that the amount of tax loss was improperly determined without adequate proof.
 
 
 25
 Belcher is correct that he was neither charged with nor convicted of tax evasion, 26 U.S.C. § 7201. Rather, his indictment and conviction were for filing false tax returns under 26 U.S.C. § 7206(1). Nevertheless, the Government's evidence showed that Belcher's falsification on his tax returns consisted of failure to report income that he received. United States Sentencing Guideline section 2T1.3 states that it applies to fraud and false statements under penalty of perjury. Further, the Commentary to section 2T1.3 states that the guideline applies to crimes that are analogous to tax evasion. Clearly, the guideline applies to Belcher.
 
 
 26
 Belcher argues that he should have been allowed to submit his proffered evidence of deductible expenses for use in calculating his taxable income. Although the trial court did not allow this evidence to go to the jury, it was not relevant to criminal liability under § 7206(1). For sentencing purposes, as to which the evidence might be relevant, Belcher was permitted to offer whatever evidence he chose to U.S. Probation for their consideration in making a sentencing recommendation to the court. The probation office determined that the tax loss was $88,595.42 and the court found this figure appropriate. This factual conclusion was supported by the testimony of the Government's witnesses at trial. Belcher has not shown that either the probation office or the court failed to consider any evidence offered in this regard.
 
 
 27
 AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for the purposes of establishing the doctrines of law of the case, res judicata or collateral estoppel. 10th Cir.R. 36.3
 
 
 **
 Honorable Paul H. Roney, Senior United States Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation