**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 23 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CHAD A. STROBLE,

      Defendant-Appellant.

No. 97-3293
(D.C. No. 97-CR-20003)
(District of Kansas)

**ORDER AND JUDGMENT***

Before **PORFILIO**, **MCKAY**, and **TACHA**, Circuit Judges.

Chad A. Stroble was convicted of being a felon in possession of a firearm in violation of 19 U.S.C. §§ 922(g)(1) and 924(a)(2) and sentenced to 87 months' incarceration. He appeals on grounds: (1) the evidence was insufficient to show he knowingly possessed the firearm; and (2) the district court erred in excluding previously sworn testimony of an unavailable witness who had testified in a prior proceeding in state court. Finding no error, we affirm.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

At approximately 4:00AM on October 14, 1996, Officer Daniels of the Kansas City Police Department was parked in his police vehicle observing traffic when he noticed a small silver vehicle traveling toward him with its lights out and on the wrong side of the street. He prepared to turn his spotlight on the vehicle, but before he was able to do so, he heard two gunshots fired. He could not see who fired the shots but noticed a muzzle flash from the driver's side window of the approaching vehicle. Two more shots were fired, and the officer again observed muzzle flashes. He said they came from a "shiny object" held by an arm reaching outside the vehicle's window on the driver's side.[1] Officer Daniels stopped the car and found the driver, Mr. Stroble, and Nancy Carley, the only passenger. From inside the vehicle, Officer Daniels recovered a box containing a stainless steel .357 magnum pistol, expended shell casings, and live rounds.

Mr. Stroble was first charged in Wyandotte County court with state violations relating to the incident. During a preliminary hearing held in that case, Ms. Carley testified the firearm was hers and Mr. Stroble knew nothing about it.[2]

---

[1]While arms do not ordinarily hold objects, the officer's testimony was less than explicit. Nonetheless, the intent of his statement is clear that the object was held by a person whose arm extended outside the window on the driver's side of the car.

[2]In its brief, the government contends immediately following the incident, Ms. Carley made statements contrary to her preliminary hearing testimony. To support this contention, the government cites only its own brief filed in the district court in opposition to defendant's motion for a new trial. Suffice to say, there is no evidentiary support for this contention.

Nevertheless, when called as a defense witness in this case, Ms. Carley refused to testify without the presence of her attorney. The district court attempted to locate the lawyer over the noon recess. Although the marshal was able to reach the attorney's office, he was told counsel was unavailable. Subsequent attempts to reach the lawyer were unsuccessful in spite of his secretary's assurance he was "in court." The importance of Ms. Carley's testimony notwithstanding, defendant did not request a recess to pursue that attempt further or seek other relief to remove the impediment from Ms. Carley's appearance. Without more, the court declared Ms. Carley "unavailable," and she was released and not required to testify.[3] Although defense counsel attempted to convince the court the transcript was admissible as permissible hearsay, the court denied the attempt.

Subsequently, Mr. Stroble took the stand and testified, in direct conflict with Officer Daniels, that no weapon was ever fired from the vehicle he was driving and he was unaware Ms. Carley possessed a gun. He explained Ms. Carley had decided at that early hour to go to the house of a friend to return several personal items and was surprised when the gun was discovered among those items. He further stated they also heard gunshots. Because he knew they were in a dangerous neighborhood, he stopped the car and turned off the lights. After a few minutes. Mr. Stroble started the car and proceeded on only to be stopped by Officer Daniels.

---

[3]Whether Ms. Carley was exercising her self-incrimination rights as the district court held, or her right to counsel, is not clear. Neither party objected to the district court's conclusion on either ground.

On appeal, Mr. Stroble first argues the evidence was insufficient to show he knowingly possessed the firearm. We review *de novo* whether there is sufficient evidence to support a jury verdict. ***United States v. Wilson***, 107 F.3d 774, 778 (10th Cir. 1997). Evidence to support a conviction is sufficient if, considered in the light most favorable to the government, it would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. ***Id.*** We do not question a jury's credibility determinations or its conclusions about weight of the evidence. ***United States v. Johnson***, 57 F.3d 968, 971 (10th Cir. 1995).

Although Mr. Stroble argues no one ever saw him possess the firearm found in the vehicle, that point is not persuasive. Viewed in the light most favorable to the government, the evidence is sufficient. As the government points out, "the testimony of Officer Daniels did put the driver of the vehicle in possession of the firearm and the defendant was determined to be that driver." The object from which Officer Daniels saw muzzle flashes was "shiny" and the revolver found in the car was stainless steel. Moreover, both spent and live cartridges were found in that gun and removed by Officer Daniels. We believe these facts were enough to support a finding the defendant possessed the firearm as charged. Defendant's argument is simply that we should believe his version of the facts rather than that of Officer Daniels. We cannot engage in that exercise.

Mr. Stroble next argues the district court improperly refused to admit the transcript of Ms. Carley's previously sworn, cross-examined testimony, but the government contends the testimony was inadmissable hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay is inadmissable unless it meets an exception provided in the Federal Rules of Evidence or another statutory authority. *United States v. Cass*, 127 F.3d 1218, 1222 (10th Cir. 1997). The district court found the prior sworn testimony was unreliable because there was no corroboration outside the statement itself, making the testimony inadmissable. But Mr. Stroble argues the testimony should have been admitted under the various sections of Fed. R. Evid. 804. We review for abuse of discretion district court rulings on the admissibility of evidence and analyze these rulings in the context of the record as a whole. *See Wilson*, 107 F.3d at 780.

### Fed. R. Evid. 804 (b)(1)

The pertinent rule provides:

> (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, … if the party against whom the testimony is now offered … had an opportunity and similar motive to develop the testimony by a direct cross, or redirect examination.

Fed. R. Evid. 804(b)(1). The government did not contest the court's holding that Ms. Carley was unavailable as a trial witness. Defendant argues this exception should apply because: (a) she had given testimony against her own penal interest; (b) the conduct forming the basis for the state charge was the same; (c) the charge in state court was comparable to the federal charge; and (d) the state prosecutor cross-examined her.[4]

First, as the government argues, it is patent that the United States was not a party to the state proceeding and did not have an opportunity to cross-examine the witness. Although defense counsel makes an argument that the United States Attorney for the District of Kansas represents the people of that state and is therefore one and the same as the state prosecutor, such is not the case. In a criminal prosecution in the United States District Court, the United States Attorney is the alter ego of the United States government. *United States v. Singleton*, 165 F.3d 1297, 1300 (10th Cir. 1999) (*en banc*).

Further, the government's reliance on *United States v. Kapnison,* 743 F.2d 1450, 1459 (10th Cir. 1984), is not particularly persuasive because it is not on point. In that case, a deposition was taken in the course of a civil action; although the witness was not cross-examined in the deposition, he was cross-examined during the later civil trial. Thus, defendant claimed the deposition testimony should be admitted in the criminal trial.

---

[4]The transcript was not submitted as part of an offer of proof, nor was there any request made to include it in the record. It is before us only as an appendix to appellant's opening brief.

The court aptly concluded, "Kapnison is simply seeking to introduce depositional testimony without cross-examination." *Id.* at 1459. The court went on to say, "This is not a *California v. Green*, 90 S. Ct. 1930 (1970), situation in which a witness' preliminary hearing statements were held admissible at trial."

*Green* provides:

> [The witness'] statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial. [The witness] was under oath; respondent was represented by counsel - the same counsel who later represented him at trial; respondent had every opportunity to cross-examine [the witness] as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings.

*Id.* at 1938. In the present case, we have many of the *Green* factors, but we are missing the same counsel and same party. The government argues these features are dispositive with respect to the 804(b)(1) claim and we agree. There is simply no logic in reading 804(b)(1) in any other way, and the district court did not abuse its discretion in refusing to admit the testimony under this subsection.

## Fed. R. Evid. 804(b)(3)

The rule provides another exception for:

> [a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, … that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

- 7 -

Fed. R. Evid. 804(b)(3). The government conceded Ms. Carley's testimony was a declaration against her penal interest. Mr. Stroble argues not only was Ms. Carley found with the firearm in a locked box[5] on her lap, but she testified the weapon had never left the box, it was not fired that night, and Mr. Stroble did not know of its presence. However, no attempt was made to establish the trustworthiness of this prior testimony with admissible evidence.[6] The government responds these circumstances, coupled with the fact that Ms. Carley allegedly was later charged with perjury as a result of her state testimony, reveal the trustworthiness of her statement is shaky at best.[7] *See United States v. Guillette*, 547 F.2d 743, 754 (2d Cir. 1976).

Mr. Stroble also relies upon *Crespin v. New Mexico*, 144 F.3d 641 (10th Cir. 1998), but that case is inapposite. *Crespin* merely held, in a habeas corpus action, it was error to admit a non-testifying accomplice's confession because the confession was

---

[5]Officer Daniels said the box was "closed," but there is no testimony it was "locked."

[6]The record shows defense counsel proffered to the court a written statement by a friend of Ms. Carley indicating the firearm was loaned to Ms. Carley for a short period of time for her protection by this friend's mother, as well as additional testimony Ms. Carley had admitted to another party the gun was hers. Here, Mr. Stroble alludes to these facts as additional corroborative information, but they are themselves hearsay and, by definition, unreliable.

[7]As Mr. Stroble points out, being charged with perjury is not the same as being convicted of it. But he cites to no case where testimony of an unavailable witness who has been charged with perjury for that testimony is admitted under a hearsay exception or found otherwise reliable. There is no evidence in the record, however, establishing the fact of the charge.

presumptively unreliable and it was impermissible to use independent corroborative evidence to support a hearsay statement. *Id.* at 646-48. *Crespin* does not stand for the proposition hearsay statements that already are patently unreliable are rendered reliable just because they do not have independent corroboration, as Mr. Stroble seems to argue. In the absence of any admissible corroborative evidence, we cannot say the district court abused its discretion in its ruling.

### Fed. R. Evid. 804(b)(5)

The rule provides an exception for:

> [a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative of the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will be best served by the admission of the statement into evidence.

The government contends Ms. Carley's testimony about possessing the gun without Mr. Stroble's knowledge directly conflicted with information she gave at the time of the incident. As we have already established, there is no basis in the record for this argument. Nonetheless, on the strength of the very slim record before us, it is doubtful admission of Ms. Carley's testimony would serve the purposes of the rules or the interests of justice. This is particularly true when the defendant did not ask for a continuance to further seek out Ms. Carley's lawyer and obtain his attendance or obtain other relief so this reason for Ms. Carley's "unavailability" could be removed. Moreover, the value of her testimony is

nothing more than speculation which does not lead us to conclude the district court abused its discretion in excluding it.

Mr. Stroble next argues he was denied due process to present witnesses in his defense, and this right is fundamental under ***Chambers v. Mississippi***, 410 U.S. 284, 302 (1973). But, as the government points out, although a defendant has a right to present witnesses on his behalf, the right is not absolute and a defendant must comply with the rules of procedure and evidence. ***See United States v. Austin***, 981 F.2d 1163, 1165 (10th Cir. 1992). None of the cases cited by Mr. Stroble shows the district court's exclusion of evidence improperly denied him due process.

**AFFIRMED.**

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge